728 A.2d 890

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ernest PORTER, a/k/a Theodore Wilson, appellant.**

Supreme Court of Pennsylvania.

Submitted April 16, 1997.

Decided March 16, 1999.

Reargument Denied April 19, 1999.

Billy H. Nolas, Philadelphia, for E. Porter.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This is an appeal from the dismissal of Ernest Porter's ("Appellant") petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* For the reasons that follow, we affirm.

Appellant was found guilty of first degree murder in the shooting death of Raymond Fiss. The jury found that there was one aggravating circumstance [1] and no mitigating circumstances, and therefore sentenced Appellant to death. This court affirmed the judgment of sentence on direct appeal. *Commonwealth v. Porter,* 524 Pa. 162, 569 A.2d 942 (1990).

---

1. The aggravating circumstance found by the jury was that the killing was committed while in the perpetration of a felony. 42 Pa.C.S. § 9711(d)(6).

On March 23, 1995, Appellant filed a PCRA petition. Ronald J. Sharper, Esquire, ("Attorney Sharper") was appointed to represent him. Subsequently, Attorney Sharper filed a "no merit" letter, pursuant to *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988),[2] stating that none of the issues raised in Appellant's petition were of arguable merit. Furthermore, he concluded that his review of the matter revealed no additional issues which could be raised in a counseled, amended petition. A hearing was convened; subsequently, on May 25, 1995, the PCRA court dismissed Appellant's petition and permitted counsel to withdraw. Appellant, represented by new counsel, thereafter filed the instant appeal.

At the outset of our analysis, we note that where post-conviction relief has been denied in a death-penalty case, the matter is directly reviewable by this court. 42 Pa.C.S. § 9546(d). Even though we already have jurisdiction over this matter, Appellant also requests that we exercise jurisdiction over his appeal pursuant to our King's Bench powers. We recently rejected an identical claim in another capital case, *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891 (1997). In that matter we stated that such a request for invocation of our King's Bench powers is

> inappropriate and unnecessary. Our King's Bench powers ... are powers of extraordinary jurisdiction. In cases in which we elect to exercise our powers of the King's Bench, our action has the effect of transferring jurisdiction of a matter pending before an inferior court to the jurisdiction of this Court. Our grant is deemed the taking of an appeal as of right. *See generally, Beharry v. Mascara*, 92 Pa.Cmwlth. 484, 499 A.2d 1129 (1985). Because we have already recognized and accepted jurisdiction in this case, and have acted upon that jurisdiction, the assumption of extraordinary jurisdiction under our powers of the King's Bench is neither possible nor necessary.

2. Such a letter is also commonly known as a *"Finley* letter" in reference to the seminal Superior Court case of *Commonwealth v. Finley*, 330 Pa.Super. 313, 479 A.2d 568 (1984).

310

*Id.* at 909. Thus, we see no basis on which to grant Appellant's request that we invoke our King's Bench powers.

Having resolved the question of our jurisdiction over this matter, we turn to Appellant's first substantive issue. Appellant claims that Attorney Sharper and the trial court failed to comply with the procedural requirements for allowing counsel to withdraw. Therefore, he claims, the order dismissing his PCRA petition should be reversed and the case remanded to the PCRA court for further proceedings.

This court in *Turner* set forth the requirements which govern the withdrawal of appointed counsel in a collateral proceeding. We stated that counsel must present a "no-merit" letter which details the nature and extent of his review. *Turner*, 544 A.2d at 928. That letter must also list each issue the petitioner wished to have raised, with counsel's explanation of why those issues were meritless. Finally, the reviewing court must conduct its own independent review and agree with counsel that the issues raised were meritless. *Id.*

█ Appellant's first contention is that Attorney Sharper violated the dictates of *Turner*. His first series of claims allege that Attorney Sharper misconstrued several of Appellant's PCRA petition issues in his "no merit" letter. His first example of such misrepresentation involves Attorney Sharper's synopsis of Appellant's claim that "the [trial] court's instruction to the jury at the penalty phase of [Appellant's] trial prevented the jury from properly exercising its discretion to determine if a life sentence would be an appropriate penalty . . . .and deprived me of full and fair consideration of of (sic) evidence in mitigation by all jurors . . . ." Appellant's PCRA petition. Attorney Sharper summarized this issue as "the court's charge to the jury at the penalty phase prevented the jury from properly excercising (sic) its discretion to give a life sentence." Appellant objects to this as Attorney Sharper's abbreviated version of this issue refers simply to "the jury" and not "all jurors". We agree with the Commonwealth that there is no distinction between the phrase "the jury" and "all

jurors," and that Appellant is engaging in a senseless semantical exercise.

Next, Appellant claims that Attorney Sharper misconstrued his claim concerning the testimony of the eyewitness to the crime. Attorney Sharper condensed Appellant's rambling, one hundred word-plus issue to read as follows: "That the only eyewitness who identified [Appellant] as the perpetrator of the crime gave false and perjured testimony." Appellant now claims that Attorney Sharper did not put in his synopsis that Appellant had also alleged that the prosecution knew that the testimony was perjured and hid this fact from Appellant. This issue merits no relief. Attorney Sharper concluded that this issue had no merit because "[t]here is no evidence to support this bare allegation. . . ." As there was no evidence to support the contention that the witness had perjured herself, then, *a fortiori*, the prosecution did not knowingly suppress this nonexistent evidence.

 Appellant next raises several claims alleging that Attorney Sharper failed to comply with his obligations under *Turner* due to his failure to conduct extra-record investigations. Appellant first alleges that Attorney Sharper ought to have conducted an extra-record investigation of his claims that an eyewitness perjured herself and that the thumbprint evidence found at the crime scene was fabricated. We reject Appellant's argument. Attorney Sharper found nothing in the record to support Appellant's position on either of these claims. In addition, Appellant never suggested any reason to suppose that the testimony was false or that the thumbprint was fabricated, and failed to identify what Attorney Sharper should have investigated. Thus, Attorney Sharper's decision not to pursue an extra-record investigation was reasonable.

 Furthermore, *Turner* does not mandate that counsel launch into an extra-record investigation of every claim raised by a PCRA petitioner on collateral attack. We also decline to engraft such a requirement onto the *Turner* holding. Compelling counsel to undertake a potentially exhaustive investigation where counsel has concluded that there is no merit to the

claim—and where there is not even the barest indication that such an investigation will prove fruitful—would not serve the ends of justice.

■ Appellant next claims that Attorney Sharper improperly failed to conduct extra-record investigations of his allegation that "other crimes" evidence was improperly admitted at his trial. This claim is baffling. Discernment of the merits of such a purely legal claim would owe nothing to extra-record investigation.

Appellant also contends that the mannerisms of Judge Sabo, the presiding judge at his trial, prejudiced him in front of the jury, and that Attorney Sharper should have conducted an extra-judicial investigation of this claim. Again, we cannot fault the decision not to engage in an extra-record investigation on this claim since there was no indication of any impropriety on the part of Judge Sabo.

■ Next, Appellant claims that Attorney Sharper should have conducted a broad extra-record investigation in the hopes that he would have uncovered additional issues which were of arguable merit. Again, we emphasize that there is nothing in *Turner* which would mandate that such an investigation be conducted by an attorney.

Finally, Appellant claims that Attorney Sharper "did not even review the record itself for issues other than those raised by [Appellant in the PCRA petition]." Appellant's brief at 18. We reject this claim as Attorney Sharper stated that he had concluded that not only were the issues raised in the PCRA petition without merit, but also "that there are no other issues of arguable merit which could be raised in a counseled Amended Petition." No-merit letter dated 5/15/1995.

Next, Appellant argues that the trial court failed to comply with the dictate that after receiving a *Finley* letter, the PCRA court must independently review the record to determine if the issues have no merit. Appellant claims that the PCRA court never stated that it had conducted its own review of the record. Appellant is simply incorrect as Judge Sabo declared

in his opinion that he "had carefully reviewed the record" in this matter. PCRA court slip op. at 2.

Appellant's next claim is that the PCRA court erred in dismissing his PCRA petition as the court failed to comply with the dictates of Pa.R.Crim.P. 1507(a). Specifically, Appellant argues that the Rule 1507(a) was violated when the PCRA court dismissed his petition without giving Appellant ten days prior notice. Appellant's analysis of Rule 1507 misses the rudimentary point that the rule is, by its title, applicable only to dispositions of PCRA petitions which occur without a hearing. In this matter, a hearing was held. Furthermore, we note that Rule 1508, which is applicable to a matter where a hearing has been convened, does not require that the court give a petitioner ten days notice prior to disposing of the case. In fact, the rule even states that the PCRA judge is entitled to dispose of the matter "in open court at the conclusion of the hearing." Pa.R.Crim.P. 1508(e).

Appellant's remaining claims of error allege that due to Attorney Sharper's ineffective preparation of Appellant's case, Attorney Sharper failed to raise more than a dozen meritorious issues.[3] As the starting point for our review of any ineffectiveness claim, we presume that counsel is effective. *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173 (1993). In order to overcome this presumption and establish that counsel was indeed ineffective, an appellant must establish three points. First, Appellant must show that the underlying claim is of arguable merit. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356 (1995). Second, Appellant must prove that counsel's action or inaction was not grounded on any reasonable basis. *Id.* In determining whether counsel's action was reasonable, we do not question whether there were other more reasonable courses of action which counsel could have

**3.** The Commonwealth argues that there is no right to effective assistance of counsel on collateral attack, and, thus, Appellant's claims that Attorney Sharper was ineffective are not cognizable. This argument must fail. In *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), we clarified that a PCRA petitioner is entitled to effective assistance of counsel in his first PCRA.

pursued; rather, we must examine whether counsel's decisions had any reasonable basis. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987). Finally, Appellant must establish that "but for the act or omission in question, the outcome of the proceedings would have been different." *Travaglia,* 661 A.2d at 357. "If it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." *Id.* We also note that an "appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims." *Commonwealth v. Beasley,* 544 Pa. 554, 678 A.2d 773, 778 (1996).

Appellant's initial claim is that Attorney Sharper was ineffective in representing him as he met with Appellant only once and that meeting occurred on the day of the hearing. Yet, counsel is not deemed ineffective *per se* merely because of the short amount of time he has met with his client. *Commonwealth v. Bundy,* 491 Pa. 607, 421 A.2d 1050 (1980); *Commonwealth v. Ellis,* 700 A.2d 948, 960 (Pa.Super.Ct.1997). Rather, in order to establish that Attorney Sharper was ineffective, Appellant must establish that counsel inexcusably failed to raise issues which, had they been raised, would have afforded Appellant relief. *See Travaglia, supra; Pierce, supra.*

Appellant clearly recognizes that he has this burden to carry. He alleges that Attorney Sharper overlooked more than a dozen claims which, if properly raised, would have afforded Appellant relief. In his first such claim, he asserts that Attorney Sharper should have claimed that trial counsel was ineffective for failing to allege that the trial court improperly constrained the jury's consideration of mitigating circumstances.[4] Specifically, Appellant claims that the jury was

4. We note that Appellant has properly "layered" all of his ineffectiveness claims, alleging that Attorney Sharper and all prior counsel were

prevented from considering a nonstatutory, or "catch-all," mitigating factor in violation of *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). In *Hitchcock,* the United States Supreme Court held that it constitutes reversible error when a jury "was instructed not to consider, and the judge refused to consider, evidence of nonstatutory mitigating circumstances...." *Id.* at 398–399, 107 S.Ct. 1821 (citing *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)). The matter *sub judice* is distinguishable from *Hitchcock,* however, because the judge's instructions did not prohibit the jury from considering a "catch-all" mitigating circumstance. In fact, the jury verdict sheet specifically listed as a mitigating factor "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." Penalty Determination Sheet, Mitigating Circumstances. Thus, this claim lacks merit.

■ Appellant next raises a host of claims relating to his mental health. The first of these claims is that trial counsel was ineffective in that he failed to conduct a reasonable investigation which would have revealed significant mitigating evidence. Specifically, Appellant claims that he had a significant history of mental problems resulting from an abusive and traumatic childhood. A strikingly similar claim was previously litigated. On direct appeal, Appellant claimed that trial counsel was ineffective for failing to investigate Appellant's psychiatric history. We stated that "[i]f counsel failed, it was because the existence of such record was hidden from him." [5] *Porter,* 569 A.2d at 946. In addition, a court-ordered psychiatric examination of Appellant established that there was no evidence that Appellant ever had or was presently suffering from any thought disorder or psychosis. *Id.* at 946–947. Appellant cannot now obtain review of this previously litigated

ineffective for failing to assert claims of trial counsel's ineffectiveness. *See Commonwealth v. Chmiel,* 536 Pa. 244, 639 A.2d 9, 12 (1994) (requiring the proper layering of ineffectiveness claims).

5. When trial counsel questioned Appellant about any history he had of mental problems, Appellant told counsel that he had never been in a mental institution or received mental health treatment. N.T., 2/27/86, at 3.

claim by presenting it in terms of a slightly different theory of ineffective assistance of counsel. *Beasley*, 678 A.2d at 778.

Next, Appellant claims that trial counsel was ineffective for failing to investigate and present diminished capacity [6] and guilty but mentally ill defenses. This claim fails for, as noted above, this court found on direct appeal that the psychiatric report prepared for the trial court revealed that Appellant was not mentally ill. Thus, trial counsel was not ineffective for failing to investigate and present diminished capacity and guilty but mentally ill defenses as the contemporary records indicated that such theories were unsupportable.

Appellant's next claim relating to his mental health status is that he was incompetent to stand trial.[7] Appellant claims that the "vast" evidence of Appellant's mental illness, presented in the form of affidavit testimony, and Appellant's statement at his trial that he never received any mental treatment when allegedly he had, establish that he was incompetent to stand trial. By claiming that he was incompetent to stand trial, Appellant is attempting to have this court revisit its finding made on direct appeal that there was no evidence that Appellant ever had, or was at the time of the direct appeal suffering from, any thought disorder or psycho-

---

6. Diminished capacity is an extremely limited defense. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 28, 454 A.2d 937, 943 (1982). In asserting a diminished capacity defense, a defendant is attempting to prove that his mental condition at the time of the crime was such that he was *incapable* of forming the specific intent to kill. If the defendant is successful, first degree murder is mitigated to third degree. *Commonwealth v. Faulkner*, 528 Pa. 57, 70, n. 4, 595 A.2d 28, 35, n. 4 (1991).

7. A defendant is presumed to be competent to stand trial. *Commonwealth v. du Pont*, 545 Pa. 564, 681 A.2d 1328, 1330 (1996). Where a defendant claims he was incompetent to stand trial, he must establish his claim by a preponderance of the evidence. *Id.* In order to prove that he was incompetent to stand trial, Appellant must show that at that time of trial, he suffered from a mental illness or defect such that he did not have the ability "to consult with counsel with a reasonable degree of rationale understanding," and did not have "a rational as well as factual understanding of the proceedings." *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891, 899 (1997) (citations and internal quotation marks omitted). We stress that the temporal focus of this inquiry is limited to the time of trial or when other legal proceedings occurred. *Id.* at 899 n. 8.

sis. *Porter*, 569 A.2d at 946–947. We refuse to do so. *Beasley, supra.*

▆▆▆▆ Appellant's final claim relating to his mental health status is that the trial court erred when it refused to grant a continuance to allow a psychiatric expert to testify on his behalf. We note that Appellant has couched this claim solely in terms of trial court error, and has not alleged that trial counsel was somehow ineffective. This claim of trial court error, however, is waived as it was not raised on direct appeal.

▆▆▆▆ Apparently anticipating such a legal ruling, Appellant vigorously argues that our relaxed waiver standard applies to a claim such as this, and allows us to review it. We must reject this argument. We recently clarified our standard and explicitly stated that we will not relax our waiver rule on collateral attack. *Albrecht*, 720 A.2d at 700. Thus, the relaxed waiver doctrine will not preserve this issue for Appellant. Appellant next asserts that trial counsel was ineffective for failing to develop an alibi defense, and all prior counsel were ineffective for failing to raise this issue of ineffectiveness. Specifically, Appellant claims that the mother of the girl Appellant had been dating in April of 1985 gave a statement to the police that Appellant was in her house until approximately one hour after the robbery-murder. Appellant claims that counsel was ineffective for failing to pursue an alibi defense based upon this statement. This claim must be denied as it has been previously litigated. *Porter*, 569 A.2d at 946; 42 Pa.C.S. § 9543(a)(3).[8]

▆▆▆▆ Also, as an aside, Appellant offers the one-line statement that Ms. Dawson's statement is the "type of information ... that the Commonwealth is required to disclose under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10

---

**8.** In the affidavit appended to his PCRA brief to this court, Appellant identifies the mother of his April 1985 girlfriend as Harriet *Dawson*. Appellant's brief at 126–127. On direct appeal, the mother of Appellant's April 1985 girlfriend was identified as Harriet *Downs*. Although we are unable to explain this discrepancy in surnames, we are confident that the woman available to testify at Appellant's trial is the same woman whose affidavit is appended to Appellant's PCRA brief.

L.Ed.2d 215 (1963)." Appellant's brief at 127. Yet, Appellant fails to realize that it is his burden to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." *Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242, 259 (1998) (citing *Commonwealth v. Rucci*, 543 Pa. 261, 670 A.2d 1129, 1140 (1996)). Not only does Appellant not support this allegation by reference to the record, but he also fails to make even a direct allegation that the evidence was indeed withheld from him. Therefore, any possible *Brady* claim is not entitled to review.

█ Appellant next claims that all prior counsel were ineffective for failing to raise the issue that hearsay testimony had been admitted improperly. Appellant's first such claim relates to two statements made by Catherine Valente. The first statement to which Appellant objects was where Ms. Valente was allowed to testify as to the description she gave of the assailant to the police. The second statement concerned Ms. Valente's exclamation "That's him, that's him," N.T., 2/20/86, at 132, when she saw Appellant's photograph on television a few days after the murder. Yet, these statements were merely cumulative of Ms. Valente's extensive in-court identification of Appellant as the assailant, testimony to which Appellant makes no objection. *Id.* at 122–129. Thus, even if we assume, *arguendo*, that Appellant's hearsay claims have merit, Appellant still has failed to establish his ineffectiveness claim as he has not shown that he has suffered any prejudice. *Commonwealth v. McNeil*, 545 Pa. 42, 679 A.2d 1253, 1259 (1996) (even assuming that appellant's claims that testimony was improperly admitted have merit, appellant still cannot prevail on his ineffectiveness claim as the allegedly improper testimony was merely cumulative of other properly admitted evidence).

Appellant's next claim concerning the admission of hearsay testimony involves statements made by Vincent Gentile. Mr. Gentile testified that on April 30, 1985, a few days after Mr. Fiss' murder, his jewelry store was robbed by several men.[9]

9. Mr. Gentile's testimony was introduced because the Commonwealth claimed that the gun used in the Gentile store robbery, and recovered

Within 15 minutes of the robbery, Mr. Gentile was taken outside to a police wagon where Appellant was being held. At Appellant's trial for the murder of Mr. Fiss, Mr. Gentile recounted how he had identified Appellant while Appellant was in the police wagon. N.T., 2/21/86, at 169. Mr. Gentile also testified that on the day after the robbery, he identified a jacket that the police had seized from Appellant as being the one which had been stolen from his shop on the day of the robbery. *Id.* at 170–171. Appellant now claims that both of these statements referring to out-of-court identifications made by Mr. Gentile were inadmissible hearsay. We have difficulty fathoming the merit of this claim from the argument provided by Appellant in his brief; on this basis alone, we could deny relief. Furthermore, we note that regardless of the merit of this claim, it still fails to provide a basis on which to award Appellant relief as these statements were merely cumulative of in-court identification testimony provided by Mr. Gentile. *Id.* at 155–156; 171–172. Therefore, Appellant has failed to establish that he was prejudiced. *McNeil,* 679 A.2d at 1259.

Appellant's next claim concerning improperly admitted testimony relates to testimony given by Detective Brown concerning the jacket which was in Appellant's possession at the time Appellant was arrested. Detective Brown testified that "Mr. Gentile ... identified that jacket in my presence." *Id.* at 198. At that juncture, defense counsel objected and moved to strike. The prosecutor responded that "in an overabundance of caution, ... I have no objection for a motion to strike." *Id.* at 199. The trial court then struck the prosecutor's question and the Detective's answer. *Id.* at 200. The remainder of Detective Brown's testimony on this issue merely indicated the date on which Mr. Gentile came to view the jacket; Detective Brown gave no testimony concerning any statement made by Mr. Gentile. *Id.* at 202–203. As the testimony of Detective Brown which remained of record made no mention of any statements made by Mr. Gentile, then Appellant's hearsay claim is wholly without foundation.

immediately after the Gentile robbery had been committed, was the same gun which was used to murder Mr. Fiss.

■ Appellant's final claim involving improperly admitted hearsay concerns the testimony given by Officer Gana concerning the recovery of the gun used in the Gentile store robbery. Officer Gana testified that while searching the vicinity of the robbery, two individuals directed his attention to a parked car; when Officer Gana approached that car, he noticed a gun lying underneath it. *Id.* at 235. Appellant claims that Officer Gana's testimony clearly "implied" that the two individuals told him that there was a gun thrown under the car by the person the police had been chasing. Appellant's brief at 103. Officer Gana, however, gave no such testimony; in fact, he gave no testimony concerning any statements made by these two individuals. As we decline Appellant's invitation to read into the record statements which were never made, we find that the claim fails due to lack of merit.

■ Appellant next claims that all prior counsel were ineffective for failing to assert that the trial court erred in its instruction to the jury on reasonable doubt. Specifically, Appellant objects to the following portion of the trial court's instruction:

A reasonable doubt is a doubt that would cause a reasonably careful and sensible person *to restrain* before acting upon a matter of importance in his own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime.

N.T., 2/26/86, at 527–528 (emphasis supplied). Appellant claims that the trial court erred in instructing the jury that a reasonable doubt was one which "would cause a reasonably careful and sensible person to restrain before acting...." Rather, he claims, the instruction which should have been given is the one presented in the Pennsylvania Standard Jury Instructions: Criminal Section, § 7.01(3) (1979), which states that a reasonable doubt is one which "would cause a reasonably careful and sensible person to *hesitate* before acting...."

■ This hyper-technical semantical claim is rejected on a plethora of bases. First, although we have historically consid-

ered the language contained in these standard instructions to be an aid in our review, we have not placed our imprimatur upon them. *See generally Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575, 583 (1991). Second, even if we had adopted this specific instruction, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61, 70 (1983). In this matter, the distinction between "hesitate before acting" and "restrain before acting" is *de minimis* and clearly such a subtle variation in phrasing would not be an abuse of the trial court's discretion. Finally, this court has actually approved of a reasonable doubt instruction which tells the jury that it is "the kind of doubt that would restrain a reasonable man (or woman) from acting...." *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258, 262 (1974) (citations omitted). As there was no basis to object to the charge as given, counsel cannot be deemed to have been ineffective. *Commonwealth v. Watley*, 548 Pa. 574, 699 A.2d 1240, 1242 (1997) (counsel is not ineffective for failing to raise meritless claims).

■ Appellant next claims that Attorney Sharper and all prior counsel were ineffective for failing to raise the issue that the jury instructions and the sentencing-phase verdict slip indicated that the jury had to find unanimously any mitigating circumstance before it could give effect to that circumstance in its sentencing decision, thus violating the dictates of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). We find this claim to be meritless. First, the trial judge's charge to the jury virtually mirrored 42 Pa.C.S. § 9711(c)(1)(iv). N.T., 2/27/86, at 68. We have previously stated that where a charge tracks this statutory language, it "does not state or infer a requirement that any given mitigating circumstance must be unanimously recognized before it can be weighed against aggravating circumstances in reaching a verdict." *Travaglia*, 661 A.2d at 366. Thus, an instruction that tracks the language of the statute, such as the one given

here, cannot be in violation of the *Mills* standard. Likewise, the verdict form closely tracked the language of the statute. Sentencing–Phase Verdict Slip. In reviewing a similar verdict slip, this court in *Commonwealth v. Hackett*, 534 Pa. 210, 627 A.2d 719 (1993) held that the verdict slip form did not infer a need for unanimity with regard to mitigating circumstances. We therefore reject this claim.

 Appellant's next claim is that Attorney Sharper was ineffective for failing to raise the claim that the Commonwealth exercised its peremptory strikes in a racially discriminatory manner, thus violating the dictates of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It is a defendant's burden to establish a prima facie case of improper use of peremptory challenges. In order to do so, the defendant must establish that

> (1) the defendant is a member of a cognizable racial group and the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; (2) the defendant can then rely on the fact that the use of peremptory challenges permits "those to discriminate who are of a mind to discriminate"; and (3) the defendant, through facts and circumstances, must raise an inference that the prosecutor excluded members of the venire on account of their race. The third prong requires defendant to make a record specifically identifying the race of all the venirepersons removed by the prosecution, the race of the jurors who served and the race of the jurors acceptable to the Commonwealth who were stricken by the defense.

*Commonwealth v. Thomas*, 552 Pa. 621, 717 A.2d 468, 475 (1998) (citing *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621, 631 (1995)).

 In the matter *sub judice,* Appellant affects to meet this burden by contending that the "Commonwealth used at least eight of its seventeen peremptory challenges to strike African–American jurors ..." and then arguing that the Commonwealth could have had no race-neutral reason for striking these jurors. Appellant's brief at 92. This claim must fail for

several reasons. First, Appellant's support for his contention that these eight people were African–Americans rests solely on the bare claim that his current counsel determined the ethnicity of these members of the venire by comparing their names against names of people on the voter registration polls. *Id.* at 92 n. 33. This type of "proof," however, is insufficient to sustain his burden as this court has emphasized that matters not contained in the official record cannot be considered by an appellate court. *Welsh v. Bulger,* 548 Pa. 504, 698 A.2d 581, 586 n. 12 (1997).

Furthermore, even if we were to accept the bare allegation of Appellant's counsel as evidence, Appellant has still failed to show that his claim is meritorious as he has not specifically identified "the race of all the venirepersons removed by the prosecution, the race of the jurors who served and the race of the jurors acceptable to the Commonwealth who were stricken by the defense." *Thomas,* 717 A.2d at 475. Without such a showing by Appellant, his claim fails. *See also Commonwealth v. Bronshtein,* 547 Pa. 460, 691 A.2d 907, 915 (1997).

Next, Appellant claims that all prior counsel were ineffective when they failed to raise the issue that the trial court judge improperly failed to give, *sua sponte,* an instruction pursuant to *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) that a life sentence means that Appellant must spend his natural life in prison without the possibility of parole. Yet, *Simmons* was not decided until a full eight years after Appellant's trial. Before *Simmons* was decided, the law of this Commonwealth specifically prohibited an instruction which would inform a jury that life means life without parole. *Commonwealth v. Edwards,* 521 Pa. 134, 555 A.2d 818, 830–831 (1989); *see also Commonwealth v. Gibson,* 547 Pa. 71, 688 A.2d 1152, 1169 (1997). Thus, as the state of the law at the time of Appellant's trial was such that a *Simmons*-type charge was explicitly forbidden, we cannot say that the trial court erred in not giving one *sua sponte.* Furthermore, we will not deem trial counsel

324

ineffective for failing to anticipate a change in the law. *Gibson*, 688 A.2d at 1169. Therefore, this claim fails.[10]

█ Appellant's final claim is that all previous counsel were ineffective for failing to raise the claim that this court's system by which it conducts its proportionality review[11] is inherently flawed. Specifically, he contends that the database compiled by the Administrative Office of the Pennsylvania Court ("AOPC") fails to provide complete statistics and therefore our proportionality review cannot be fair. We recently reviewed a similar claim in *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426 (1997). We noted that in conducting our proportionality review,

> we examine not only the compiled data from the AOPC, but we also have at our disposal the verdict sheets and the review forms submitted by the President Judges. This allows us to conduct a thorough review of cases similar to the one in question and provides additional screening for any anomalies that may be present in the AOPC database. We have carefully reviewed these procedures and find nothing arbitrary or capricious in this scheme. Instead, we believe that our proportionality review comports with the General Assembly's desire to afford capital defendants an additional check against the arbitrary imposition of the death penalty.

10. In addition, we note that a *Simmons* charge is warranted only where the issue of a defendant's future dangerousness is brought into question. *Simmons*, 512 U.S. at 155–157, 114 S.Ct. 2187. *But see Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31 (1998) (Nigro, J., concurring, joined by Flaherty C.J., and joined in relevant part by Zappala, J., would hold that a *Simmons* instruction should be given, prospectively, in all capital cases regardless of whether the issue of a defendant's future dangerousness is raised.) As Appellant makes no argument that future dangerousness was ever an issue in his case, he has failed to show that he was entitled to such an instruction.

11. We note that recently enacted legislation struck the statutory provisions requiring this court to conduct a proportionality review of death sentences. Act of June 25, 1997, No. 28, § 1 ("Act 28"), effective immediately. This court, however, continues to undertake a proportionality review in cases where the death sentence was imposed prior to the effective date of Act 28. *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426 (1997).

*Id.* at 441. We find nothing in Appellant's argument which persuades us that our reasoning in *Gribble* was incorrect. Therefore, we find no merit to Appellant's claim that prior counsel were ineffective for failing to raise a challenge to the proportionality review scheme.

For the foregoing reasons, we find that Appellant has failed to sustain his burden of proof of establishing that Attorney Sharper was ineffective in his representation of Appellant. Therefore, we affirm the order of the PCRA court.[12]

12. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor. 42 Pa.C.S. § 9711(i).