J-S24035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN DANIELS | : | |
| | : | |
| Appellant | : | No. 1131 EDA 2018 |

Appeal from the PCRA Order April 2, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012667-2011

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **Filed June 10, 2019**

Appellant Brian Daniels appeals from the order entered by the Court of Common Pleas of Philadelphia County denying Appellant's petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Counsel has filed a petition to withdraw and an accompanying brief.  After careful review, we affirm the PCRA court's order and grant counsel's petition to withdraw.

On direct appeal, the trial court summarized the factual background of this case as follows:

> On July 10, 2011, an argument occurred between neighbors Latisha Dudley and Thea Knight on the 4500 block of Hurley Street.  Latisha Dudley and her daughter confronted Thea Knight about a parking ticket Dudley received, blaming Knight for the ticket and insisting she pay it.  Knight then went back inside her house and called her boyfriend, Troy Taylor (a.k.a. Lionel Tyson). Taylor returned home and also argued with Dudley.  Dudley threatened to break the windows and slash the tires of Taylor and

_____

* Former Justice specially assigned to the Superior Court.

Knight's van. Taylor threatened to retaliate by pouring sugar in her gas tank.

The following day, Taylor and Knight returned home from a doctor's appointment to find their van had been vandalized. A tire had been slashed, the front passenger window was broken, and the radio console was missing. Knight brought her children inside, and Taylor walked to the end of the block to confront Appellant, Dudley's boyfriend. In the course of the confrontation, Appellant attempted to hit Taylor in the face, but missed. Taylor then swung at and hit Appellant. The fight was quickly broken up by other men in the neighborhood, and Taylor returned to his van to inspect the damages. Knight watched the altercation from her house and saw Appellant walking back to his house with blood around his eye. When Appellant exited the house again[,] he was holding a black 9-millimeter [(9-mm)] gun. Taylor testified that as Appellant was walking down the front steps, he was loading bullets into the gun. Appellant lifted the gun, took a step towards Taylor, and then fired at Taylor. Taylor ducked behind the van and moved around it to avoid [being] shot. Appellant followed him around the van and fired his gun two more times at Taylor. Taylor was not struck by any of the bullets. After firing three shots, Appellant returned to his house. Knight witnessed this from her home across the street and called the police.

Officer William Stephan and his partner responded to the report of a shooting on the 4500 Block of Hurley Street at 6:45 p.m. Taylor was still on the street and met the officers to speak with them. Officer Stephan testified that when they initially spoke to Taylor, he was "very frazzled and excited." Taylor described the incident and the individual who had shot at him. Officer Stephan found two fired shell casings on the top of Taylor's van, and observed damage to the vehicle. Upon learning that Appellant had returned to his house following the shooting, Officer Stephan and his partner secured the house. Officer Stephan called his supervisor and suggested the premises be held for a barricade.

SWAT officers arrived at the scene and began establishing a barricade around Appellant's house at about 7:00 p.m. At approximately 7:35 p.m., they entered the building. However, nobody was found inside the home at that time. No weapons were found inside the home by SWAT.

Detective Michael Alers was assigned to investigate the shooting and also arrived at the scene at about 7:00 that evening. He took photographs of the scene and recovered fired 9-[mm] casings. In the course of his investigation into the shooting, Detective Alers also applied for two search warrants: one for a 2000 Ford SUV registered to Latisha Dudley, and another for a Lexus registered to Appellant. From the vehicle registered to Latisha Dudley, Detective Alers recovered the vehicle's insurance information, which listed both Ms. Dudley's and Appellant's names, the vehicle registration, several traffic citations, and a box of ammunition. The box of ammunition contained eleven live rounds and ten capped rounds (also described as blanks). The box was labeled "38 special" but contained "assorted ammo" according to Detective Alers.

At trial, Appellant presented an alibi witness, Thomas Daniel, who worked with Appellant at the time of the shooting. Mr. Daniel also testified that he has been dating Appellant's mother for "fifteen or so years." Thomas Daniel works in air conditioning and refrigeration, and at the time of the shooting he had been working with Appellant and helping him secure a job in the same field. At trial, Mr. Daniel testified that on the day the shooting occurred, Appellant was in the Bronx, New York, accompanying him on several jobs. He referred to two job tickets, which listed work being done on July 11, 2011, from 3:00 to 5:35 in the afternoon. Mr. Daniel testified that Appellant was with him during this time period in the Bronx. Mr. Daniel also testified that he did not see Appellant after 6:45 that evening until he woke up the next morning. Latisha Dudley, Appellant's girlfriend, also testified that she had dropped him off at the train station the day before the shooting to go to New York.

Mr. Daniel was interviewed by Detective Alers on September 10, 2013. At the time he stated he had no documentation to reflect that Appellant had made repairs or been present in New York that day. He stated that since he worked with several people who were "off the books," he did not keep attendance records. Latisha Dudley also gave a statement to Detective Alers on September 13, 2013. She had not spoken to the detective about taking Appellant to the train station prior to this statement.

Trial Court Opinion (T.C.O.), 9/15/15, at 3-6 (citations to the record omitted).

On July 11, 2014, the trial court convicted Appellant of aggravated assault, simple assault, recklessly endangering another person (REAP), possession of an instrument of crime (PIC), carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possession of a firearm by a person prohibited. On December 11, 2014, the trial court imposed an aggregate term of four to eight years' imprisonment to be followed by five years' probation. Appellant filed a timely post-sentence motion, which was denied by operation of law. On August 9, 2016, this Court affirmed the judgment of sentence. Appellant did not file a petition for allowance of appeal with the Supreme Court.

On December 23, 2016, Appellant filed a *pro se* PCRA petition. The PCRA court appointed Appellant counsel, who filed an amended petition on Appellant's behalf. On February 7, 2018, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant did not respond to the Rule 907 notice. In an order dated March 28, 2018 and docketed April 2, 2018, the PCRA court dismissed Appellant's petition. This timely appeal followed. Appellant's counsel filed notice of his intent to file an **Anders**/**McClendon** brief pursuant to Pa.R.A.P. 1925(c)(4) in lieu of a statement of errors complained of on appeal.

Our standard of review is as follows:

> When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a de novo standard.

- 4 -

*Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1272 (2016)

(quotation marks and quotations omitted).[1]

As an initial matter, we must first review counsel's petition to withdraw.

Counsel petitioning to withdraw from PCRA representation must proceed ... under [*Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988)] and ... must review the case zealously. *Turner*/*Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

Where counsel submits a petition and no-merit letter that ... satisfy the technical demands of *Turner*/*Finley*, the court — trial court or this Court — must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

*Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa.Super. 2012) (quoting

*Commonwealth v. Wrecks,* 931 A.2d 717, 721 (Pa.Super. 2007)).

_____

[1] We note that any PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1).  Appellant's sentence became final on September 8, 2016, when the thirty-day appeal period expired for seeking review with our Supreme Court.  *See* 42 Pa.C.S.A. § 9545(b)(3) (providing that a "judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review"); Pa.R.A.P. 1113(a).  Thus, Appellant filed a timely petition on December 23, 2016.

We note that defense counsel has filed his petition to withdraw on the basis of frivolity pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Although **Anders** briefs are filed by counsel who wish to withdraw on direct review, we will accept counsel's **Anders** brief in lieu of a **Turner-Finley** letter, as an **Anders** brief provides greater protection to criminal defendants. **See Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa.Super. 2004).

After reviewing the record and counsel's petition to withdraw, we find that PCRA counsel has complied with the technical requirements of **Turner** and **Finley**, **supra**. In his appellate brief, PCRA counsel detailed the nature and extent of his review, listed numerous issues of arguable merit, and explained why he believed each claim was frivolous. Counsel indicated that after his own independent review of the record, he could not identify any meritorious issues that he could raise on Appellant's behalf. Moreover, counsel attached his letter to Appellant specifically indicating that he believed that the appeal was wholly frivolous for the reasons set forth in his brief and notifying him of his right to raise additional points for consideration by proceeding *pro se* or with the assistance of privately retained counsel. **See Commonwealth v. Muzzy**, 141 A.3d 509, 511 (Pa.Super. 2016).

We now consider the issues PCRA counsel presents in his brief to ascertain whether any of the claims entitles Appellant to relief. PCRA counsel

raises eleven claims of the ineffectiveness of counsel.[2]  In reviewing claims of

ineffectiveness of counsel, we are guided by the following principles:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.  *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs."  *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000)....  Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise.  *See Pierce*, *supra*; *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

---

[2] We note PCRA counsel's brief does not comply with two of our rules of appellate procedure.  While PCRA counsel acknowledges in the discussion portion of his brief that Appellant raised eleven ineffectiveness claims in his petitions, PCRA counsel's statement of the issues presented in the appellate brief does not list any of these specific arguments.  Our rules of appellate procedure provide that "the statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail." Pa.R.A.P. 2116(a).

Moreover, counsel does not provide an organized discussion of Appellant's numerous claims, but reviews them in a random order in one analysis section without defined sections for each claim.  Our rules of appellate procedure specifically require that the argument section of the brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."  Pa.R.A.P. 2119. Nevertheless, as PCRA counsel's non-compliance with the rules of appellate procedure does not prevent this Court from conducting meaningful review of the appeal, we will review counsel's appellate brief in this case.

> [**Commonwealth v. Natividad**, 595 Pa. 188, 207–208, 938 A.2d
> 310, 321 (2007);] *see also Commonwealth v. Hall*, 582 Pa.
> 526, 537, 872 A.2d 1177, 1184 (2005) (stating an appellant's
> failure to satisfy any prong of the *Pierce* ineffectiveness test
> results in a failure to establish the arguable merit prong of the
> claim of ineffectiveness).

***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa.Super. 2018).

First, Appellant claimed trial counsel was ineffective in failing to litigate

a motion to dismiss based on Pa.R.Crim.P. 600.

> In evaluating Rule [600] issues, our standard of review of a trial
> court's decision is whether the trial court abused its discretion.
> Judicial discretion requires action in conformity with law, upon
> facts and circumstances judicially before the court, after hearing
> and due consideration. An abuse of discretion is not merely an
> error of judgment, but if in reaching a conclusion the law is
> overridden or misapplied or the judgment exercised is manifestly
> unreasonable, or the result of partiality, prejudice, bias, or ill will,
> as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record
> of the Rule [600] evidentiary hearing, and the findings of the
> [trial] court. An appellate court must view the facts in the light
> most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is
> not permitted to ignore the dual purpose behind Rule [600]. Rule
> [600] serves two equally important functions: (1) the protection
> of the accused's speedy trial rights, and (2) the protection of
> society. In determining whether an accused's right to a speedy
> trial has been violated, consideration must be given to society's
> right to effective prosecution of criminal cases, both to restrain
> those guilty of crime and to deter those contemplating it.
> However, the administrative mandate of Rule [600] was not
> designed to insulate the criminally accused from good faith
> prosecution delayed through no fault of the Commonwealth.
>
> So long as there has been no misconduct on the part of the
> Commonwealth in an effort to evade the fundamental speedy trial
> rights of an accused, Rule [600] must be construed in a manner
> consistent with society's right to punish and deter crime. In

considering [these] matters..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Leaner*, 202 A.3d 749, 765–66 (Pa.Super. 2019)

(quoting *Commonwealth v. Armstrong*, 74 A.3d 228, 234–35 (Pa.Super.

2013)).

Our Supreme Court has summarized requirements of Rule 600 as

follows:

By the terms of Rule 600, the Commonwealth must bring a defendant to trial within 365 days from the date upon which a written criminal complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). However, the Rule 600 run date may be adjusted pursuant to the computational directives set forth in Subsection (C) of the Rule. For purposes of the Rule 600 computation, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." *Id.* 600(C)(1). "Any other periods of delay," including those caused by the defendant, "shall be excluded from the computation." *Id.* When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant. Absent a demonstration of due diligence, establishing that the Commonwealth has done "everything reasonable within its power to guarantee that [the] trial begins on time," *Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12, 17 (1998), the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. *See* Pa.R.Crim.P. 600(D)(1).

*Commonwealth v. Barbour*, ____Pa.____, 189 A.3d 944, 947 (2018).

Moreover, this Court has held that:

For purposes of determining the time within which trial must be commenced pursuant to paragraph (A), paragraph (C)(1) makes

- 9 -

it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time. Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.

Delay in the time for trial that is attributable to the judiciary may be excluded from the computation of time. However, when the delay attributable to the court is so egregious that a constitutional right has been impaired, the court cannot be excused for postponing the defendant's trial and the delay will not be excluded.

Pa.R.Crim.P. 600, cmt. (citations, quotation marks and brackets omitted).  It is well-established "that the Commonwealth cannot control the schedule of the trial courts and that therefore [j]udicial delay can support the grant of an extension of the Rule [600] rundate." **Commonwealth v. Trippett**, 932 A.2d 188, 198 (Pa.Super. 2007) (quotations and citations omitted); **see also Commonwealth v. Preston**, 904 A.2d 1, 14 (Pa.Super. 2006) (*en banc*) (finding judicial delay was not attributable to the prosecution where "the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of scheduling difficulties and the like") (citation omitted).

In this case, the criminal complaint was filed on November 16, 2011. Thus, Appellant's mechanical run date was November 16, 2012. Although Appellant's trial did not commence until July 29, 2014, which was well beyond the mechanical run date, the docket shows that the extension of the run date was substantially the result of defense requests for continuation, joint requests for continuation, and judicial delay caused by a busy court schedule.[3] *See also Commonwealth v. Peterson*, 19 A.3d 1131, 1137 (Pa.Super. 2011) (finding that a joint continuance is excludable delay). As such, there is no merit to Appellant's claim that counsel was ineffective in failing to file a Rule 600 claim.

In the second and third claims, Appellant asserted that trial counsel was ineffective in failing to challenge the trial court's pre-trial ruling that limited the scope of the defense's cross-examination of certain prosecution witnesses with the fact that Taylor was arrested for shooting Appellant's girlfriend, Latisha Dudley, just hours after the instant offense.

However, our review of the record reveals that counsel obtained the trial court's permission to question Taylor and Knight about the open charges against Taylor for the subsequent shooting of Dudley. N.T., 7/29/14, at 15. Trial counsel did question Taylor and Knight about the second shooting and the circumstances of Taylor's arrest. Per the Commonwealth's request, the

---

[3] It appears that Appellant can only attribute two delays to Commonwealth requests for continuances from October 3, 2011 to November 17, 2011 and from November 22, 2013 to December 6, 2013.

trial court limited further examination of Taylor as to avoid areas in which Taylor would invoke his Fifth Amendment privilege against self-incrimination. There is no arguable merit to Appellant's claim that trial counsel did not seek to question Taylor and Knight about the second shooting.

Moreover, Appellant has not shown how trial counsel's failure to seek further cross-examination of these witnesses resulted in any prejudice, such that the outcome of his proceedings would have been different. **See Johnson**, **supra**. Evidence that Taylor subsequently shot at Appellant's girlfriend does not advance Appellant's theory that the prosecution witnesses fabricated their account that Appellant committed the instant offenses. Rather, Taylor's prior identification of Appellant as his shooter on July 10, 2011 supports a stronger inference that he had motive to shoot Appellant's girlfriend hours later on July 11, 2011. As such, the PCRA court correctly dismissed this claim of ineffectiveness.

Fourth, Appellant claimed trial counsel was ineffective in failing to cross-examine Taylor as to why he failed to name Appellant as the shooter when initially questioned by police, but instead, merely gave a description of Appellant told police where Appellant lived. We note that the trial court was made aware of this fact as one of the responding officers testified that Taylor did not initially give Appellant's name to the police. N.T. 7/30/14, at 53-55, 66. While Appellant did not have the opportunity to ask Taylor *why* he did not initially name him as the shooter, Appellant has not shown that he was

prejudiced, that is, that but for this omission, that the outcome of his proceedings would have been different. *See Johnson*, *supra*.

Fifth, Appellant argued that trial counsel was ineffective in failing to move for a mistrial based on a statement made by Detective Alers. This testimony was elicited when the prosecutor was discussing the fact that while eyewitnesses had testified that Appellant had shot his firearm three times, the police only discovered two fired cartridge casings at the scene. After the prosecutor asked Detective Alers if it was a common occurrence not to find all the cartridge casings at the crime scene, Detective Alers confirmed that he had experienced that situation several hundred times. He also discussed an unrelated incident where he was qualified to fire his weapon and one casing inadvertently ended up his pant pocket. N.T., 7/30/14, at 94-95.

However, our courts have emphasized that "[m]istrials should be granted only when an incident is of such a nature that its unavoidable effect is to deprive appellant of a fair trial." *Commonwealth v. Johnson*, 572 Pa. 283, 306, 815 A.2d 563, 576 (2002). We cannot see how this comment caused Appellant prejudice such that the outcome of his proceeding would have been different. Moreover, in a bench trial, the trial court, sitting as fact finder "is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." *Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa.Super. 2017) (quoting *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa.Super. 2014)). Given these principles, we find that the extreme

remedy of a mistrial was not warranted in this case based on Detective Alers's statement.

Sixth, Appellant asserts that counsel was ineffective in failing to object to Taylor's testimony that Appellant started the initial confrontation by swinging his fist at Taylor. However, even assuming *arguendo* that Appellant is correct in alleging that Taylor was the initial aggressor, this fact alone does not establish a valid self-defense claim for Appellant as the evidence showed Appellant retreated inside his home to retrieve a gun and returned to fire several shots at Taylor. **See** 18 Pa.C.S.A. 505. As the disputed fact in no way proves that Appellant was justified to respond to Taylor with deadly force, we cannot find trial counsel was ineffective for failing to object to Taylor's testimony.

Seventh, Appellant argues that trial counsel was ineffective in failing to file a suppression motion arguing that the box of .38 caliber ammunition found in Latisha Dudley's vehicle was inadmissible. However, the record shows that trial counsel did file a motion to suppress all evidence seized from this vehicle, but the trial court subsequently denied the suppression motion. As a result, this ineffectiveness claim has no merit.

Moreover, Appellant challenged the trial court's denial of his suppression motion on direct appeal. This Court, after addressing the merits of Appellant's claim, found the affidavit of probable cause was sufficient to justify the search warrant for Dudley's vehicle. "[A] petitioner cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective

assistance of prior counsel and presenting new theories of relief to support previously litigated claims." ***Commonwealth v. Bracey****,* 568 Pa. 264, 795 A.2d 935, 939 n. 2 (2001) (citing ***Commonwealth v. Porter****,* 556 Pa. 301, 728 A.2d 890, 896 (1999)). As such, Appellant's previously litigated claim is not cognizable under the PCRA.

Eighth, Appellant alleged that trial counsel was ineffective for failing to object to hearsay testimony from Detective Alers that an anonymous officer told him that Appellant had fled the scene in a 2000 Ford SUV. Our review of the record reveals that Detective Alers testified that he had already begun investigating the scene, when Dudley pulled up in the SUV. He indicated that another officer had told him that "the SUV was involved in the incident, that [Appellant] had fled inside this SUV." N.T. 7/29/14, at 30.

However, "it is elemental that, an out of court statement which is not offered for its truth, but to explain the witness' course of conduct is not hearsay." ***Commonwealth v. Carson****,* 590 Pa. 501, 567, 913 A.2d 220, 258 (2006) (citation omitted). Detective Alers made this comment in explaining how he came in contact with Latisha Dudley at the crime scene and confirmed that he did not use the unidentified officer's statement in seeking a warrant to search the SUV. As Detective Alers's statement was admitted to show his course of conduct, and not for its truth, it was not hearsay. As a result, the PCRA court did not err in denying this ineffectiveness claim.

In his ninth claim, Appellant asserts that counsel was ineffective for failing to prepare alibi witness, Thomas Daniel, for trial. As noted above,

Thomas Daniel, who has been dating Appellant's mother for approximately fifteen years, testified that he works in air conditioning and refrigeration and was on the job in New York with Appellant at the time of the shooting. When initially interviewed by Detective Alers in September 2013, Daniel indicated that there was no documentation to show that Appellant was working with him in New York on the day of the shooting. Daniel then explained that he did not keep attendance records as several workers were "off the books." N.T. Trial, 7/29/14, at 118.

While Appellant baldly asserts that trial counsel failed to prepare Daniel to testify, he offers no additional detail to argue how counsel's performance was deficient. Rather, he appears to be unsatisfied with the PCRA court's decision to find Daniel's testimony not credible. However, "[a] PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court." *Commonwealth v. Treiber*, 632 Pa. 449, 465, 121 A.3d 435, 444 (2015) (citation omitted). As such, the PCRA court did not err in denying this claim.

Tenth, Appellant claims trial counsel was ineffective in failing to produce corroborating evidence to support his alibi, including, *inter alia*, Appellant's cell phone records and the testimony of Daniels's boss. We first note that Appellant did not provide his phone records to the PCRA court and has not determined what the phone records would show or argued how such records would support the defense. Even assuming Appellant's phone records reflected that his phone was in New York at some point, they would not

conclusively prove that Appellant could not have been in Philadelphia on the night of the shooting.

With respect to Appellant's claim that trial counsel should have secured the testimony of Daniel's boss to confirm Appellant's alibi, it is well-established that "[i]n order to demonstrate counsel's ineffectiveness for failure to call a witness, a petitioner must prove that "the witness existed, the witness was ready and willing to testify, and the absence of the witness' testimony prejudiced petitioner and denied him a fair trial." ***Commonwealth v. Stahley***, 201 A.3d 200, 211 (Pa.Super. 2018) (quoting ***Commonwealth v. Luster***, 71 A.3d 1029, 1047 (Pa.Super. 2013) (citations omitted)).  However, Appellant has not offered any evidence as to the identity of Daniel's boss or asserted that he was willing to testify on Appellant's behalf.  In fact, Daniel refused to identify his boss and admitted that his boss would likely be unwilling to talk to detectives or testify on Appellant's behalf.  N.T., 7/29/14, at 147, 150-151.   As such, this ineffectiveness claim fails.

In his final claim, Appellant contends that trial counsel was ineffective in failing to produce expert testimony to challenge the testimony of the crime scene officers and eyewitnesses.  In addition to the aforementioned precedent set forth in ***Stahley***, we note the following:

> "[w]hen a defendant claims that some sort of expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence." ***Commonwealth v. Williams***, 537 Pa. 1, 29, 640 A.2d 1251, 1265 (1994) citing ***Commonwealth v. Holloway***, 524 Pa. 342, 572 A.2d 687

(1990). This is consistent with our Supreme Court's previous mandate that to justify an evidentiary hearing with respect to assertions of ineffectiveness of trial counsel, it is required that an offer of proof be made that alleges sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective. ***Commonwealth v. Durst***, 522 Pa. 2, 5, 559 A.2d 504, 505 (1989). Claims of ineffectiveness of trial counsel cannot be considered in a vacuum. ***Id.***

***Commonwealth v. Steward***, 775 A.2d 819, 831-832 (Pa.Super. 2001).

Moreover, "[t]he mere failure to obtain an expert witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause." ***Id***. at 832 (citation omitted).

Beyond his bald assertion that trial counsel should have presented a ballistics expert, Appellant did not articulate what evidence was available, identify an expert willing to testify on Appellant's behalf, or explain how such testimony would have advanced his cause. As a result, Appellant's claim is based on pure speculation. As such, Appellant failed to demonstrate that this particular claim of trial counsel's ineffectiveness is of arguable merit.

Accordingly, we conclude that the PCRA court did not err in dismissing Appellant's petition, which does not contain any non-frivolous issues of arguable merit. We, therefore, grant counsel's petition to withdraw and affirm the PCRA court's order dismissing Appellant's petition.

Petition to Withdraw as Counsel granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/10/2019