805 A.2d 1212

COMMONWEALTH of Pennsylvania, Appellee

v.

Raymond MOORE, Appellant.

Supreme Court of Pennsylvania.

Submitted May 15, 2000.

Decided Aug. 28, 2002.

510

Thomas N. Farrell, Pittsburgh, for appellant, R. Moore.

Michael W. Streily, Pittsburgh, for appellee, Com. of PA.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice NIGRO.

Appellant Raymond Moore appeals the order of the Superior Court reversing the PCRA court's order granting him a new trial based on his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541, *et seq.* For the reasons that follow, we reverse.

The record establishes that on September 29, 1989, at approximately 10:30 p.m., Tirone Bivens and three of his friends arrived at the Apollo Lounge where Appellant was an

employee. Mr. Bivens immediately walked to the kitchen area of the lounge to order some food. Mr. Bivens and Appellant began arguing over money that had been lying on the floor. Mr. Bivens picked up the money, threw it in Appellant's face and left the lounge. Thereafter, Appellant went into the kitchen, retrieved a knife and followed Mr. Bivens out of the lounge. Aware that there was a problem, Mr. Bivens' friends left the lounge in search of him. Mr. Bivens' friends found him about one-tenth of a mile from the lounge, in an alley, hunched over and in a daze. A fight broke out between Mr. Bivens' friends and other people present at the scene. At this time, Appellant arrived and fatally stabbed Mr. Bivens.

At trial, Appellant argued self-defense, but the jury nonetheless convicted him of first-degree murder. On December 1, 1989, Appellant was sentenced to life imprisonment. At trial, Robert Foreman, Esq. represented Appellant. Mr. Foreman, though associated with the Public Defender's Office of Allegheny County, was privately retained to represent Appellant. Mr. Foreman also represented Appellant during his post-trial motions. After these motions were denied, Appellant, through Mr. Foreman, petitioned to have counsel appointed for him in order to pursue his appeal since he was without sufficient funds to retain private appellate counsel. On December 6, 1989, the trial court appointed the Public Defender of Allegheny County to represent Appellant on his appeal to the Superior Court. On appeal, the Superior Court affirmed Appellant's judgment of sentence. *Commonwealth v. Moore*, 407 Pa.Super. 648, 584 A.2d 1049 (1990). Thereafter, a Petition for Allowance of Appeal was filed and subsequently denied by this Court on February 6, 1991. *Commonwealth v. Moore*, 527 Pa. 599, 589 A.2d 689 (1991).

On March 13, 1993, Appellant filed a pro se petition for post-conviction relief that was later amended by appointed counsel, Robert Barrett. During his representation of Appellant, Mr. Barrett was disbarred, and on October 14, 1994, the PCRA court appointed Stephen Begler to represent Appellant in his PCRA appeal. In an amended PCRA petition, Mr. Begler raised the issue of trial counsel's ineffectiveness for

failing to raise a diminished capacity defense. After a hearing, the PCRA court found that Mr. Foreman had been ineffective for failing to raise a diminished capacity defense and granted Appellant a new trial. On appeal, the Superior Court reversed, holding that Appellant had waived his ineffective assistance of counsel claim by failing to raise it at his first opportunity to do so. *Commonwealth v. Moore*, 745 A.2d 43 (Pa.1999). Mr. Begler sought permission to withdraw as counsel and instant counsel was appointed to represent Appellant.

On appeal to this Court, the first issue Appellant presents is whether the Superior Court erred in reversing the PCRA court's grant of a new trial by ruling that appellate counsel, an assistant public defender, was required to raise the ineffective assistance of his associate, who was retained to represent Appellant in a private capacity.[1] We find that the Superior Court did not err.

In order to establish a claim of ineffective assistance of counsel under the PCRA, an appellant must show that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999). Moreover, a claim of ineffective assistance of counsel must be raised "at the earliest stage in the proceedings at which allegedly ineffective counsel is no longer representing the defendant." *Commonwealth v. Carson*, 559 Pa. 460, 741 A.2d 686, 697 (1999) (citation omitted).

Generally, where subsequent appellate counsel is an associate of the allegedly ineffective counsel, subsequent coun-

1. Initially we note that this Court's review of the denial or grant of post-conviction relief is limited to an examination of whether the PCRA court's determination is supported by evidence of record and free from legal error. *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 728 n. 10 (2000). Furthermore, since the issue presented to this Court on review involves a question of law, our scope of review is plenary. *Commonwealth v. Lussi*, 562 Pa. 621, 757 A.2d 361, 362 n. 2 (2000).

sel is not required to raise his associate's ineffectiveness. *Commonwealth v. Green,* 551 Pa. 88, 709 A.2d 382, 384 (1998). In *Green,* this Court stated: "As a general rule, a public defender may not argue the ineffectiveness of another member of the same public defender's office since appellate counsel, in essence, is deemed to have asserted a claim of his or her own ineffectiveness." *Id.* (citations omitted). This rule provides a means to ensure that appellate counsel will "provide the zealous advocacy to which an appellant is entitled." *Commonwealth v. Fox,* 476 Pa. 475, 383 A.2d 199, 200 (1978). Moreover, this rule applies equally in instances where the allegedly ineffective counsel was co-counsel or merely an associate in the same office. *See Commonwealth v. Glasco,* 481 Pa. 490, 393 A.2d 11, 12 (1978) (subsequent counsel not required to raise the ineffectiveness of allegedly ineffective counsel when they were all members of the same public defender's office); *Commonwealth v. Fox,* 383 A.2d at 200 (attorney need not allege ineffectiveness of co-counsel).

Nonetheless, our Court has held that where trial counsel was privately retained, but associated with a public defender's office, and where subsequent counsel is an attorney at the same public defender's office, a different result follows. This precise circumstance was before this Court in *Commonwealth v. Green,* where we stated:

The record reflects that appellant was represented at trial by privately-retained counsel, but has been represented on appeal by members of the same public defender's office. Thus, appellant's claim that trial counsel was ineffective is waived because it was not raised by appellate counsel at the Superior Court level.

*Green,* 709 A.2d at 384 (footnote omitted).[2]

The present case is distinguishable from the line of cases holding that an ineffective assistance of counsel claim is not

2. This Court noted that there were two reasons that supported this outcome. First, there was no evidence of record that trial counsel was ever affiliated with the public defender's office. This circumstance, however, does not apply to the present case. The second reason, and the one applicable to the present case, was that "trial counsel indicated

waived when the allegedly ineffective counsel is an associate of subsequent counsel. Instead, this case presents the same circumstance this Court was presented with in *Green*. Here, although Mr. Foreman, Appellant's trial counsel, was associated with the Allegheny County Public Defender's Office, he was privately retained by Appellant. He was hired in a capacity separate and apart from his relationship to the Public Defender's Office. Appellant's subsequent appellate counsel were associates at the Allegheny County Public Defender's Office. Generally, had Mr. Foreman represented Appellant in his capacity as a public defender, subsequent appellate counsel would not have been required to raise Mr. Foreman's ineffectiveness because they would have been associates of the same office. *See Glasco*, 393 A.2d at 11. However, since Mr. Foreman was privately retained, subsequent appellate counsel were required to raise his ineffectiveness at the earliest stage of the proceedings, notwithstanding the fact that Mr. Foreman may have been associated with subsequent counsel in other cases. *See Green*, 709 A.2d at 384. Accordingly, Appellant's ineffective assistance of counsel claim—as presented to the Superior Court—was waived because it should have been, but was not, raised by appellate counsel on appeal to the Superior Court.

Although Appellant failed to raise a cognizable claim to the Superior Court, in his brief to this Court, he raises essentially the same claim but in a properly layered format. Appellant asserts that "PCRA counsel gave ineffective assistance for failing to raise the ineffective assistance of appellate counsel for failing to raise the ineffective assistance of trial counsel for failing to raise a diminished capacity defense." App. Brief, at 5. This Court has previously held that we will review such a properly layered ineffectiveness claim, even if it is raised for the first time on appeal to this Court. *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 303 n. 7 (1999).[3]

that he was representing appellant in his capacity as a privately retained attorney, rather than as a public defender." *Green*, 709 A.2d at 384 n. 5.

3. In *Commonwealth v. Pursell*, this Court stated:

For the reasons set forth below, we agree with the PCRA court that Appellant's underlying ineffectiveness claim provides a basis for relief.

■ Applying the standard set forth above governing ineffectiveness claims under the PCRA, we must first determine whether the PCRA court properly determined that Appellant's underlying claim that trial counsel was ineffective for failing to raise a diminished capacity defense has merit. *See Kimball,* 724 A.2d at 333. The diminished capacity defense is only available in limited circumstances. *Commonwealth v. Travag-*

> The provisions in the PCRA regarding waiver of issues, coupled with the requirement of proper preservation of issues for appellate review on direct appeals, force a petitioner to frame his claims as "layered" ineffectiveness claims, because there has usually been waiver by previous counsel's failure to raise or preserve the underlying issue the petitioner wants the PCRA court to address.
>
> *Pursell,* 724 A.2d at 302. We further stated that "a properly layered claim challenging PCRA counsel's ineffectiveness would not be waived, and can be reviewed on appeal from the denial of the PCRA petition." *Id.* at 303 n. 7.
>
> Despite Mr. Justice Castille's assertions to the contrary in his concurring and dissenting opinion, *Pursell* clearly controls the instant case. Justice Castille insinuates that allowing appellants to present claims of PCRA counsel's ineffectiveness on appeal to this Court subverts the PCRA's timeliness requirements by permitting the Court to consider "new claims" that were never presented in a timely PCRA petition. Neither the statutory language of the PCRA nor *Pursell,* however, support such an argument. The PCRA timeliness provisions simply do not speak in terms of claims, instead providing only that a petitioner must file a PCRA **petition** within one year of a judgment becoming final, as Appellant clearly did here. At the same time, *Pursell* did not in any way treat the appellant's claims of PCRA counsel's ineffectiveness as new claims that should have been presented in a separate PCRA petition but rather, consistent with this Court's precedent, treated such claims of ineffectiveness as ones being presented at the first available opportunity to do so. Although Justice Castille correctly notes that *Pursell* was not decided under the 1995 amendments, which added the timeliness requirements to the PCRA, we fail to see how these amendments serve to alter *Pursell's* clear holding that this Court may properly review claims of PCRA counsel's ineffectiveness when it is an appellant's first, and quite possibly only, opportunity to do so. In fact, were this Court to adopt Justice Castille's logic, then it would seem that in situations where a *pro se* PCRA petitioner filed a petition on the 364th day of his judgment becoming final, and counsel was subsequently appointed and raised "new" claims in the amended PCRA, those claims would, according to Justice Castille's reasoning, run afoul of the PCRA's time-bar.

*lia,* 541 Pa. 108, 661 A.2d 352, 359 (1995). "In asserting a diminished capacity defense, a defendant is attempting to prove that he was incapable of forming the specific intent to kill; if the defendant is successful, first degree murder is mitigated to third degree." *Commonwealth v. Legg,* 551 Pa. 437, 711 A.2d 430, 433 (1998) (quoting *Travaglia,* 661 A.2d at 359 n. 10). To prove a claim of diminished capacity, expert psychiatric testimony "that addresses mental disorders affecting the cognitive functions [of deliberation and premeditation] necessary to formulate specific intent is admissible." *Legg,* 711 A.2d at 433 (internal quotations and citations omitted).

The record from the PCRA evidentiary hearing establishes that at the time of trial, Mr. Foreman, Appellant's trial counsel, did not investigate, pursue or present any type of psychological defense for Appellant. N.T., 3/19/98, at 23. Moreover, Dr. Herbert Levit, an expert in forensic psychology, testified at the evidentiary hearing that:

> [I]n my opinion, [Appellant] was suffering from a major depression recurrent plus poly-substance abuse at that time. When you take into account his childhood, the fact that he had been consistently victimized, the fact that at that point he had just gotten out of a psychiatric hospital, after having been himself accosted and beaten and attacked three times within a reasonably short period of time, when he had this money taken from him, this was, from his point of view, kind of the last straw of being a victim. And he wanted that money back, and that's all he could think about. I don't think at that point when he was very angrily pursuing the victim that he was really capable of intent. *I think his capacity was significantly diminished to formulate any intent.* And I think that at that point and even at the point of his trial there was a question in my mind of his competence.... [Appellant's] ability to formulate an intent to commit a premeditated murder was significantly impaired, and with the history that he had, with his mental illness, which was still actually present at that time, *that his capacity, in general was diminished. As I had said, I don't*

*think there was, from my perspective, the ability to commit a first degree murder.*

N.T., 3/19/98, at 8–9 (emphasis added).

As the PCRA court noted, Dr. Levit's testimony was the type of evidence, which, if believed, would have reduced Appellant's degree of mental culpability, thereby decreasing the degree of Appellant's crime. Accordingly, we agree with the PCRA court that Appellant's claim has arguable merit.

Next, Appellant must establish that Mr. Foreman had no reasonable strategic basis for not presenting a diminished capacity defense. Essentially, Appellant must show that Mr. Foreman knew, or should have known, of Appellant's psychiatric history. *Legg*, 711 A.2d at 433. Mr. Foreman testified at the evidentiary hearing that he knew that Appellant was the child of an incestuous rape and that he had several items of violent trauma in his immediate past before the incident, including having part of his ear bitten off and being stabbed. Had Mr. Foreman inquired or investigated the facts and circumstances of Appellant's situation, which included an attempted suicide and subsequent institutionalization, counsel could have used such information to present a diminished capacity defense. While Mr. Foreman presented a defense of self-defense, the theories of self-defense and diminished capacity are not mutually exclusive and could have been presented together. Thus, we find that the PCRA court did not err in finding that Mr. Foreman should have inquired of Appellant's psychological makeup, and for this reason, we agree with the PCRA court that he had no reasonable basis for not presenting a diminished capacity defense.

Finally, Appellant must establish that there is a reasonable probability that the outcome of the proceedings would have been different. Regarding this element, the PCRA court stated:

Here, the diminished capacity defense quite possibly could have led the jury to believe that [Appellant] could not have formed the requisite intent to be found guilty of first-degree murder. Dr. Levit had given testimony on this exact point,

declaring that: 'As I had said, I don't think he was fully competent at the time the crime was committed, so I don't think there was, from my perspective, the ability to commit a first degree murder.' Depriving the jury of this type of testimony clearly is prejudicial to [Appellant].

PCRA Ct. Op., 7/21/98, at 5–6. We agree with the findings of the PCRA court and thus believe that the PCRA court properly determined that Mr. Foreman was ineffective for failing to present a diminished capacity defense. Furthermore, we find that appellate counsel and PCRA counsel were also ineffective for failing to raise this claim at the earliest stage of the proceedings.[4] Accordingly, we reinstate the order of the

4. In his concurring and dissenting opinion, Justice Castille argues that Appellant's claim regarding the ineffectiveness of appellate and PCRA counsel is waived and quotes language from this Court's decisions in *Commonwealth v. Bracey*, 787 A.2d 344, 350 n. 4 (Pa.2001) and *Commonwealth v. Abdul–Salaam*, 786 A.2d 974, 977 n. 3 (Pa.2001), in support of this argument. Of course, the waiver language cited by Justice Castille dealt with claims that were presented in a significantly different fashion than the one at issue here. In *Bracey* and *Abdul–Salaam*, the specific issues found waived by the Court were ones that the respective appellant had presented as claims of straight trial court error or prosecutorial misconduct—as if still on direct appeal—and were not framed as claims of counsel's ineffectiveness. Rather, at the end of these particular claims, Bracey and Abdul Salaam merely tacked on a bald statement that all prior counsel were ineffective for failing to raise and/or properly litigate the underlying claim, without ever attempting to apply or discuss the tripartite standard governing ineffectiveness claims. It was in this context that the Court concluded that "such an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief." *Bracey*, 787 A.2d at 350 n. 4; *Abdul–Salaam*, 786 A.2d at 977 n. 3. The Court in *Bracey*, however, did address the merits of claims presented in the same manner as the issue considered by the Court today. Like the claims reviewed by the Court in *Bracey*, the claim at issue here is not presented as if Appellant is still on direct appeal, i.e. asking this Court to consider a clearly waived claim of straight trial court error. Rather, the claim is not only presented and discussed as one of counsel's ineffectiveness, with the three prongs of the ineffectiveness standard applied to the claim as it relates to trial counsel, but is properly-layered, taking into account that previous counsel could have raised the issue of trial counsel's ineffectiveness but failed to do so. This Court has previously found, indeed in *Bracey* itself, that such a claim is sufficiently developed so as to warrant review. *See, e.g., Bracey*, 787 A.2d at 351–357 (reviewing numerous claims where appellant's discussion section addresses each prong of the ineffective-

PCRA court granting Appellant a new trial and remand for further proceedings consistent with this opinion.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE files a concurring and dissenting opinion in which Justice NEWMAN and Justice EAKIN joins.

Justice NEWMAN files a concurring and dissenting opinion.

Justice CAPPY concurs in the result.

Justice SAYLOR concurring.

On the basis of the Court's decision in *Commonwealth v. Legg,* 551 Pa. 437, 711 A.2d 430 (1998), I am constrained to join the disposition directed by the lead opinion.[1] I am unable to meaningfully distinguish *Legg,* since the expert there, Dr. Herbert Levit, is the same psychologist who testified at the PCRA hearing in the present case, and here, as in *Legg,* Dr. Levit "spoke to more than an inability of Appellant to control [him]self, and directly related Appellant's underlying mental defect to [his] inability to formulate a specific intent to kill." *Id.* at 444–45, 711 A.2d at 433.

The difficulty that I have with Dr. Levit's testimony is that it is quite unspecific in terms of mental health diagnosis, as well as the medical reasons why Appellant's mental condition

ness standard as it relates to trial counsel and at least includes a properly-layered assertion that all prior appellate counsel were ineffective for failing to raise trial counsel's ineffectiveness). The circumstances in *Abdul–Salaam,* of course, were different than those in either *Bracey* or the instant matter as Abdul–Salaam's trial counsel was also his counsel for purposes of direct appeal, thereby removing any need to layer any ineffectiveness claims presented. Unlike the waived claims discussed above, which Abdul–Salaam presented as straight claims of error, this Court did address the merits of Abdul–Salaam's claim that was framed as one of ineffectiveness and which addressed each prong of the ineffectiveness standard as it related to trial counsel. *See* 786 A.2d at 977–979. Clearly, then, the Court in *Bracey* and *Abdul–Salaam* considered the merits of issues framed in the same manner as the issue considered here and therefore, despite Justice Castille's assertions to the contrary, neither Bracey nor Abdul–Salaam received disparate treatment from this Court and would have no basis to argue otherwise.

1. Mr. Justice Castille filed a dissenting opinion in that case, which I joined. *See Legg,* 551 Pa. at 449–65, 711 A.2d at 435–43 (Castille, J., dissenting).

eliminated his ability to form the requisite specific intent to commit murder. For example, Dr. Levit testified that Appellant suffered, *inter alia,* from major depression. This term, however, covers a broad range of mental states, each characterized by different groupings of features. *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 339–345, 376–78 (4th ed.1994). Rather than presenting a specific diagnosis and describing the nature and degree of an associated cognitive impairment, the focus of Dr. Levit's testimony was directed more generally to rendering an opinion on the ultimate legal question involved. *See, e.g.,* N.T., March 19, 1998, at 8 ("I think that his capacity was significantly diminished to formulate any intent"), *id.* at 9 ("so I don't think there was, from my perspective, the ability to commit a first degree murder").

Particularly in light of the truncated and conclusory nature of the expert testimony, it is also troubling to me that it cannot be discerned from the record just what understanding Dr. Levit possesses concerning the legal requirements about which he was rendering an opinion. Indeed, on cross-examination, the psychologist seemed to maintain a very broad perspective concerning the conditions that would support a diminished capacity defense under Pennsylvania law. *See* N.T., March 19, 1998, at 17 ("certainly when a person is violent when they are mentally ill or when they are under the influence of cocaine or alcohol or what have you, I don't think that this is the same kind of violence as a premeditated kind of thing"). As Justice Castille discussed at length in his dissenting opinion in *Legg,* under the law prior to *Legg,* Dr. Levit's testimony would have been insufficient as a matter of law to support a diminished capacity defense. *See Legg,* 551 Pa. at 458, 711 A.2d at 440 (Castille, J., dissenting)("The defense of diminished capacity can only be established if the proponent proves that a the time of the killing, he was suffering from a mental disease, illness or delusional mental state that wholly precluded the cognitive functions of planning, premeditation and deliberation" (citations omitted)).[2]

---

**2.** In this regard, the defense of diminished capacity should be distinguished from mitigating circumstances in a capital case, in that a

Although the *Legg* majority did not acknowledge that its decision represented an expansion of the diminished capacity defense, I remain unable to read it otherwise, and, despite the above reservations and those previously expressed by Justice Castille, I therefore find it controlling here.

Justice CASTILLE, concurring and dissenting opinion.

I join Mr. Justice Nigro's lead opinion only to the extent that it determines that the Superior Court properly concluded that appellant waived his claim of trial counsel ineffectiveness when he did not raise it on direct appeal, since trial counsel, though associated with the local public defender's office, represented appellant in a private, retained capacity, and the public defender was then appointed and represented appellant on direct appeal. As Justice Nigro notes, by Pennsylvania judicial rule, claims of counsel ineffectiveness must be raised at the earliest stage at which the allegedly ineffective counsel no longer represents the defendant.

The finding of no error by the Superior Court, the court whose judgment is the subject of this discretionary appeal, should put an end to the matter. Instead, four Justices, in a non-precedential ruling, overturn appellant's first degree murder conviction based upon a non-constitutional claim of PCRA counsel ineffectiveness which was never raised in the PCRA court or in the Superior Court. In reaching the merits of this brand-new claim, the Court acts as a court of original jurisdiction over collateral attacks, invites abuse of the allocatur process and, more disturbingly, undermines the PCRA's time restriction. 42 Pa.C.S. § 9545(b).[1] In addition, on the merits

substantially broader range of mental health disorders would qualify as mitigation evidence.

1. The PCRA petition in this case was filed before the 1995 amendments to the PCRA took effect in January, 1996 and, thus, is governed by the previous version of the Act. Although the time bar was enacted as part of the 1995 legislation, it is directly implicated here because the Court grants relief upon a claim that was never part of the PCRA petition. By permitting appellant to raise on allocatur an entirely new claim that should properly have been the subject of a serial PCRA petition, which would have been governed by the restrictions now set forth in § 9545(b), the time bar necessarily is implicated.

of the new claim, the Court ignores two unanimous opinions of this Court in finding trial counsel ineffective, and ignores governing law in holding that both direct appeal counsel and PCRA counsel were *per se* ineffective for failing to pursue the underlying claim of trial counsel ineffectiveness. I disagree with the Court's apparent conclusion that parties are free to raise new claims not raised below on allocatur, especially when that practice subverts the PCRA. I also disagree with the analysis of the underlying trial counsel ineffectiveness claim undertaken by the lead opinion. Finally, I disagree with the lead opinion's application of a *per se* standard for Sixth Amendment claims of appellate counsel ineffectiveness as well as claims of PCRA counsel ineffectiveness. Accordingly, I respectfully dissent from the grant of a new trial.

This case was before the Superior Court upon a Commonwealth appeal from the PCRA court's grant of a new trial based upon a finding that appellant's privately-retained trial counsel was ineffective for failing to present the limited defense of diminished capacity, rather than the total defense of justification that trial counsel actually pursued. In finding trial counsel ineffective, the PCRA court relied in large part upon the 4–3 decision in *Commonwealth v. Legg*, 551 Pa. 437, 711 A.2d 430 (1998), a case decided nine years after the trial in this matter, and seven years after the direct appeal. The Superior Court reversed the grant of a new trial because it found that the claim of trial counsel ineffectiveness was waived under the PCRA. This Court now holds that this determination by the Superior Court was correct, which it unquestionably was. *E.g., Commonwealth v. (Michael) Pierce*, 567 Pa.186, 786 A.2d 203, 212 (2001) (claims of trial court error or ineffective assistance of trial counsel, which could have been raised on direct appeal by new counsel but were not, are waived under PCRA). This conclusion should end our review here.

Despite the fact that we sit in review of the Superior Court and the Court unanimously concludes that that Superior Court committed no error in its review, the Court inexplicably grants relief. It does so based upon a claim that appellant never

raised in his PCRA petition, in the PCRA court, or in the Superior Court: *i.e.,* a brand-new claim that PCRA counsel was ineffective for failing to raise a "layered" claim of ineffectiveness respecting diminished capacity that encompassed direct appeal counsel, since the underlying claim had been waived on direct appeal. The new claim was raised for the first time in appellant's allocatur petition. Under the terms of the PCRA, and this Court's precedent, the Court simply cannot review or grant relief upon this claim.

As a general rule, issues which were not raised in the court below are waived on appeal. Pa.R.A.P. 302(a) ("Issues not raised before the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 725 (2000); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 704 (1998). *See also Commonwealth v. Piper,* 458 Pa. 307, 328 A.2d 845, 847 (1974) (issue not raised in trial court or Superior Court cannot be raised for first time upon allocatur). There is, perhaps, no more fundamental principle of Pennsylvania appellate jurisprudence. In addition to the fact that appellate courts are not equipped to determine the factual predicates that control many legal issues (such as whether counsel articulated a credible, reasonable basis for a challenged action or inaction), the requirement of issue preservation reaffirms that the main event in legal disputes is the trial of the matter. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114, 116 (1974) ("Appellate court consideration of issues not raised in the trial court results in the trial becoming merely a dress rehearsal."). Issue preservation also ensures equal treatment of the parties to litigation. *Id.* ("The ill-prepared advocate's hope is that an appellate court will come to his aid after the fact and afford him relief despite his failure at trial to object to an alleged error. The diligent and prepared trial lawyer—and his client—are penalized when an entire case is retried because an appellate court reverses on the basis of an error opposing counsel failed to call to the trial court's attention."). Issue preservation also permits the trial judge to reconsider and alter rulings thereby avoiding appeals, conserving pre-

cious judicial resources, and focusing those disputed legal issues that remain so as to make for better, more useful appellate guidance. Appellate courts are overburdened enough without permitting or encouraging new claims being raised upon appeal, much less upon discretionary appeal. What this Court reasoned in abrogating the direct appeal fundamental error theory over a quarter century ago in *Dilliplaine* is just as true of issue preservation questions today:

> Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

*Id.* at 116–17 (footnotes omitted).

Exceptions to the general rule of issue preservation have arisen in the direct appeal context. Most pertinent here is the judicially created practice of entertaining claims of ineffectiveness in criminal cases when they are raised by new counsel on appeal. This perhaps counter-intuitive rule is a concomitant of this Court's precedent requiring that "a claim of ineffectiveness must be raised at the earliest possible stage in the proceedings at which counsel whose effectiveness is questioned no longer represents the defendant." *Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 384 (1998); *see also Common-*

*wealth v. Kenney,* 557 Pa. 195, 732 A.2d 1161, 1164 (1999); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977).

In Mr. Justice Nigro's lead opinion, a plurality of the Court justifies reaching the new claim in this case by citing to *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 303 n. 7 (1999), a capital case that was before this Court on direct appeal, not allocatur review, from a denial of PCRA relief. *Pursell,* in turn, cited *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998), another capital case before this Court on direct appeal from the denial of PCRA relief, not allocatur review, for the proposition that the criminal-rules based right to counsel on a PCRA petition includes an enforceable right to effective assistance of counsel and, thus, a claim of PCRA counsel ineffectiveness, raised for the first time on the PCRA appeal by new counsel, is reviewable.

These capital cases in which this Court was acting in a direct appeal capacity are consistent with the *Hubbard* line recognizing that claims of predecessor counsel ineffectiveness not only may, but must, be raised by new counsel at the first opportunity, with the direct appeal stage being deemed just such an opportunity. But these cases do not address the distinctly different circumstance of allocatur review which is presented here. Review on allocatur by this Court "is not a matter of right, but of sound judicial discretion" which will be allowed "only when there are special and important reasons therefor." Pa.R.A.P. 1114. Review on allocatur is so unlikely and unpredictable a matter that it hardly qualifies as a required "opportunity" to raise a new claim in the same way as a direct appeal—which is available in equal fashion to all criminal defendants as a matter of right. Indeed, if allocatur is to be deemed a separate "opportunity" to raise a new ineffectiveness claim, then all defendants who had new counsel during the direct appeal allocatur process will be deemed to have waived any claim of appellate counsel ineffectiveness that they did not raise, for the first time, upon allocatur. I know of no precedent so holding.

More importantly, the very nature of allocatur review is such that it cannot be deemed to encompass new claims. Unlike in a direct appeal, the focus on allocatur is not upon the prospect of belatedly-discovered error in a particular case, but upon the performance of the intermediate appellate courts, the consistency of state-wide law, and the novelty or unique public importance of the particular issue. This Court's Internal Operating Procedures make this fact plain:

**A. Standards.** Petitions for allowance of appeal ("allocaturs") may be granted for any of the following reasons:

1. that the holding of the intermediate appellate court conflicts with another intermediate appellate court opinion;

2. that the holding of the intermediate appellate court conflicts with a holding of this Court or the United States Supreme Court on the same legal question;

3. that the question presented is one of first impression, *and* of such substantial public importance as to require prompt and definitive resolution by this Court;

4. that the issue involves the constitutionality of a statute of this Commonwealth;

5. that the intermediate appellate Court has so far departed from accepted judicial practices or so abused its discretion as to call for the exercise of this Court's supervisory authority.

Internal Operating Procedures of the Supreme Court, V. Our allocatur docket is not designed to permit a favored class of litigants to present new claims as the lead opinion would now allow, but as an avenue whereby this Court discharges its supervisory duties with respect to the lower courts.

Indeed, if new claims are now to be deemed a proper focus of allocatur, our role will shift from being a reviewing and supervisory court to being a court of original jurisdiction for collateral attacks upon a judgment—at least for certain arbitrarily favored litigants. The lead opinion's approach is squarely at odds with the very language of the PCRA. 42 Pa.C.S. § 9545(a) ("original jurisdiction over a proceeding under this subchapter shall be in the court of common pleas").

It is no less squarely at odds with our Rules of Criminal Procedure. Rule 902(B) specifically provides that: "Each ground relied upon in support of the relief requested *shall* be stated in the *petition*. Failure to state such a ground in the petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief." *Id.* (emphasis supplied). In this regard, what this Court has noted about the Superior Court's proper role as a reviewing court is no less true of this Court:

> In reaching the merits of the instant claim by disregarding the proceedings in the PCRA court, the Superior Court acted as a secondary PCRA court. This was error. The Superior Court has no original jurisdiction in PCRA or other proceedings; therefore, its consideration of the claims raised by [counsel] could only be achieved in furtherance of its appellate jurisdiction. *See* 42 Pa.C.S. §§ 741–42. An appellate court is limited to reviewing the record of the proceedings below for error.

*Commonwealth v. Kenney,* 557 Pa. 195, 732 A.2d 1161, 1165 (1999). This Court should think long and hard before approving, as the lead opinion would, such a radical departure from our principled, traditional practice and reaching, on an *ad hoc* basis, new claims raised upon allocatur.

The lead opinion has no response to these considerations as it rushes to act as a secondary PCRA court and grant relief upon a claim never raised below. Instead, it declares that *Pursell* decided the question of non-capital docket, allocatur reviewability, when it most demonstrably did not. Because I do not believe that allocatur review should exist as a free-ranging commission to speak to select questions never part of the litigation below, I cannot agree with the plurality's explanation of the reason why it entertains this particular appellant's claim.

There are additional separation of powers concerns that counsel against our reaching new claims raised on allocatur review of PCRA appeals. "By its own language, and by judicial decisions interpreting such language, the PCRA provides the sole means for obtaining state collateral relief."

*Commonwealth v. Hall,* 565 Pa. 92, 771 A.2d 1232, 1235 (2001), *citing* 42 Pa.C.S. § 9542; *Commonwealth v. Ahlborn,* 548 Pa. 544, 699 A.2d 718, 721 (1997). Accordingly, a petitioner is entitled to relief under the PCRA only if he satisfies the provisions of that statute. In addition to the fact that the PCRA vests original jurisdiction in the trial courts, the PCRA also now contains a strict time limitation, *see* 42 Pa.C.S. § 9545(b) (PCRA petitions, including second or subsequent petitions, must be filed within one year of final judgment), and it also severely limits those claims that can be filed after that deadline expires. *Id.* (setting forth three narrow exceptions to time bar; petition invoking exception must be filed within sixty days of date claim could have been presented). This Court has upheld these provisions against multiple attacks based on constitutional and other grounds. *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517 (2001); *Commonwealth v. Gamboa–Taylor,* 562 Pa. 70, 753 A.2d 780 (2000); *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214 (1999); *Commonwealth v. Banks,* 556 Pa. 1, 726 A.2d 374 (1999); *Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638 (1998).

The new, "layered" ineffectiveness claim which the Court entertains and grants relief upon was not raised in the PCRA petition which is at issue on this appeal or in any amendment to that petition. Consistently with the PCRA, it can now be raised only via a second or subsequent petition filed in the PCRA court. By reaching a claim never presented in the PCRA petition that was actually filed and was at issue on direct appeal, the plurality, by judicial fiat, would essentially create an "end-around" the General Assembly's clear and unequivocal restrictions upon serial post-conviction petitions. It also invites conversion of this Court's allocatur docket into a repository for what are in reality serial PCRA petitions raising claims of PCRA counsel ineffectiveness—where they inevitably will be treated in an uneven fashion.

Of course, neither *Pursell* nor *Albrecht* remotely support the lead opinion's conversion of the *allocatur* process into an end-around the PCRA's time restrictions. Indeed, *Pursell* and *Albrecht* involved petitions filed before the 1995 PCRA

amendments, and there was no argument or discussion in either case as to whether permitting review of new claims of PCRA counsel ineffectiveness would be proper against a claim that such a practice would defeat the time bar adopted in the 1995 PCRA amendments.

The lead opinion responds to this point concerning the PCRA time-bar by asserting that, if the Court were to adopt this Justice's logic, "then it would seem that in situations where a *pro se* PCRA petitioner filed a petition in the 364th day of his judgment becoming final, and counsel was subsequently appointed and raised 'new' claims in the amended PCRA, those claims would, according to Justice Castille's reasoning, run afoul of the PCRA's time bar." Op. at 1216 n. 3. In point of fact, my reasoning suggests nothing of the sort. This case is not in the PCRA court, but rather is before this Court on *discretionary* review of a *final order* in a PCRA matter. Thus, this is not a case where the petitioner seeks to "amend" a timely-filed PCRA petition in the court having original jurisdiction. The petition filed in the PCRA court is now frozen in time, and yet the lead opinion would allow appellant to add, on allocatur no less, an entirely new substantive claim sounding not only in the Sixth Amendment, as his previous claim did, but a new layered claim implicating both the Sixth Amendment (governing direct appeal counsel) and our Criminal Rules (governing PCRA counsel).

In response to the PCRA court amendment hypothetical posed by the lead opinion, however, I note that I view it as an open question, not presented here, of whether entirely new issues may properly be added as amendments at the PCRA trial court level after the one-year time bar has expired. On this point, I would note that there is something to be said for a construction that would limit the petitioner to claims that were identified in his petition in a timely fashion, while, of course, permitting amendment to develop and support the timely-identified claims. Significantly, that is the approach the Third Circuit Court of Appeals has taken to the federal habeas statute of limitations. *See United States v. Duffus*, 174 F.3d 333, 337 (3d Cir.1999) (stating that district court was correct in

denying petitioner's motion to amend to add new claim filed after time allowed for appeal, because allowing such amendment would frustrate very intent of Congress in creating time-bar). There is obvious force to such an argument; indeed, a contrary rule, permitting endless and untimely amendments to add new substantive claims, as the lead opinion seems to advocate in its dictum, would totally eviscerate the PCRA time-bar.

My difficulty with the lead opinion's position, however, is much more fundamental. Its *ad hoc* rule would allow certain criminal defendants to pursue upon allocatur claims that were *never* raised in the PCRA petition or on direct appeal, while consigning all other defendants to raise procedurally indistinguishable claims only by invoking the PCRA's exceptions to the time-bar. That judicial rule, I respectfully submit, is a truly radical step in obvious tension with statutory, 42 Pa.C.S. § 9545(b), and existing rules-based authority. Pa.R.Crim.P. 902(B). Moreover, this end-around the PCRA is even more arbitrary than was fundamental error review. The only PCRA petitioners who will share in this largesse are petitioners who are both fortunate enough to retain, or have appointed, new counsel for purposes of allocatur, and lucky enough to convince this Court to entertain their new claims. All other PCRA petitioners, who wish to assail their initial PCRA counsel, will be faced with the requirements of the statute—and, under our precedent, their claims of PCRA counsel ineffectiveness will likely be time-barred. *See Gamboa–Taylor,* 753 A.2d at 785–86. Thus, even if the lead opinion's *ad hoc* rule did not undermine the PCRA, it would be unacceptably arbitrary to me. Notably, the similarly *ad hoc* nature of fundamental error review was one of the reasons this Court abrogated that doctrine. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114, 116–17 (1974) ("the [fundamental error review] theory has never developed into a principled test, but has remained essentially a vehicle for reversal when the predilections of a majority of an appellate court are offended").

I also dissent because, even assuming that I could agree that new claims may properly be raised on allocatur from an appellate denial of PCRA relief, I cannot accept the plurality's summary conclusion that all of appellant's previous attorneys were incompetent. The lead opinion's entire analysis of the stewardship of direct appeal and PCRA counsel consists of the following conclusion: "Furthermore, we find that appellate and PCRA counsel were also ineffective for failing to raise this claim [i.e., the claim that trial counsel was required by the Sixth Amendment to raise a diminished capacity defense] at the earliest stage of the proceedings." Slip op. at 9. In my view, subsequent counsel are not automatically ineffective for failing to pursue a claim that appears only in hindsight and only on the barest of facts to a majority of this Court to have merit.

First, the underlying predicate for the plurality's summary conclusion of subsequent counsel ineffectiveness—i.e., that trial counsel was ineffective under Commonwealth v. Legg, 551 Pa. 437, 711 A.2d 430 (1998)—is erroneous in its own right. Trial defense lawyers are not obliged to pursue a diminished capacity defense whenever one is theoretically available. To the contrary, as the Commonwealth notes in its able brief, this Court recently decided a case, in a unanimous opinion authored by Mr. Justice Cappy, in which we held that trial counsel was not ineffective for failing to raise just such a defense. See Commonwealth v. Laird, 555 Pa. 629, 726 A.2d 346, 353–54 (1999) (whether counsel was ineffective for failing to pursue diminished capacity does not depend upon whether such defense could have been mounted but on whether course actually chosen by counsel was reasonable).

The Commonwealth follows its discussion of Laird with extended argument on why trial counsel's performance in this case is closer to the performance in Laird than that of counsel in Legg. The Commonwealth accurately notes that counsel in this case was given no reports or other information that would have led him to believe that any mental health defense was appropriate or available. In Legg, by contrast, trial counsel's investigator had prepared a report which made reference to

the appellant's recent hospitalization and care under a "Dr. Dabney." In point of fact, the appellant in that case was hospitalized a scant two months before the shooting, at which point she was suffering from "major depression" and was "actively homicidal and suicidal." Trial counsel admitted that he knew that the appellant was experiencing anxiety and depression before her trial, but he attributed that to the fact of the impending trial, never pursuing the matter further. Trial counsel also "inexplicably" admitted that "he never reviewed" his investigator's report. It was only on this extraordinary record that this Court concluded that "[c]ounsel had available to him sufficient indicia of Appellant's pre-arrest mental disorder to warrant further investigation." 711 A.2d at 433–34. Neither the lead opinion nor the concurrences acknowledge the Commonwealth's accurate distinction of *Legg* or its reliance upon *Laird,* much less do they explain why the sharply divided opinion in *Legg* controls here, rather than Justice Cappy's subsequent, unanimous opinion in *Laird.*

The Commonwealth also presents persuasive argument, similarly ignored by the plurality, as to why it was objectively reasonable for trial counsel, in this case where appellant's *own testimony* went to self-defense, not to pursue an additional defense of diminished capacity:

[T]here should come a point when an attorney must place credence in what his or her client tells them [sic] occurred and must maintain credibility with a jury by not parading too many inconsistent defenses before it.... An attorney should [not] be required to throw all possible defense theories to a jury in hopes that one sticks when he believes that his client has a strong affirmative defense that should result in acquittal or that, at worst, his client is guilty of manslaughter rather than murder. If counsel had presented the case in accordance with how the trial court found he should have, the jury would have been asked to juggle and reconcile the following: *self defense:* yes it was an intentional killing but it was justified because my client had a reasonable belief that the victim was going to cause him death or serious bodily injury (*i.e.,* my client does not admit criminal

liability and you should acquit him); *imperfect self defense:* yes, it was an intentional killing but my client was under sudden and intense passion resulting from serious provocation and if you do [not] agree that his belief in serious bodily injury or death was reasonable, find it unreasonable and convict him of voluntary manslaughter but he is definitely not guilty of murder; and *diminished capacity:* even though my client contests criminal liability and asks that you acquit him on the basis of self defense, and even though his belief, if unreasonable justifies only a manslaughter conviction, ignore that testimony and find that he did [not] have the capacity to premeditate and deliberate and convict him of third degree murder. Such mixing of strategies really would sound like trial counsel had no faith in his client's credibility and had just participated in a defense charade.

Brief of Appellee at 32–33. The defense *actually pursued* in this case, particularly in light of what little was made known to counsel of appellant's history, was no less reasonable than the defense in *Laird.* The Court's dismissive approach to the course actually pursued by counsel violates fundamental precepts of ineffectiveness review. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This is so because it is "all too tempting" for a defendant to second-guess counsel, and "all too easy" for a court to deem a particular act or omission unreasonable merely because counsel's overall strategy did not achieve the result his client desired. *Id.; see also Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (*Strickland* Court adopted "the rule of contemporary assessment" because it recognized that "from the perspective of hindsight there is a natural tendency to speculate as to whether a different trial strategy might have been more successful"); *Waters v. Thomas,* 46 F.3d 1506, 1514 (11th

Cir.1995) ("nothing is clearer than hindsight—except perhaps the rule that we will not judge trial counsel's performance through hindsight"). *Accord Commonwealth v. Washington,* 549 Pa. 12, 700 A.2d 400, 410 (1997).

Furthermore, even dismissing, as the Court does through silence, counsel's actual course of conduct, *Legg* does not command relief here because, although the same psychologist testified in both cases, his testimony was not at all the same. In holding that Dr. Levit's testimony was adequate to support a diminished capacity defense in *Legg,* the four-Justice majority there noted that Levit had opined that the appellant "lacked the *ability* to rationally formulate an intent to kill," and had related her underlying mental defect to that *"inability* to formulate a specific intent to kill." *Legg,* 711 A.2d at 433 (emphasis added). The testimony from Levit relied upon by the plurality in this case, however, does not state that appellant *lacked the ability,* as a result of a mental defect, to formulate a specific intent to kill, but only that his ability in this regard was "diminished." This "diminished" diminished capacity testimony does not prove an *incapacity* to formulate specific intent and, as such, is irrelevant. *Legg,* 711 A.2d at 433 (diminished capacity defense attempts to show that defendant was incapable of forming specific intent to kill). To my knowledge, there is no such thing as an "imperfect diminished capacity" defense. It beggars belief to conclude that this sort of testimony, confused by the "expert's" awkward attempt to convert the inexact "science" he might know about into a legal construct he decidedly is not expert in, was of such a quality that counsel was obliged to produce it, and a jury likely would have accepted it.

In this regard, the summary grant of relief here is inconsistent with yet another unacknowledged, but unanimous, decision of this Court. In *Commonwealth v. McCullum,* 558 Pa. 590, 738 A.2d 1007 (1999), McCullum argued, as appellant here does, that his trial counsel was ineffective for failing to present a diminished capacity defense. McCullum, like appellant, relied upon testimony from Dr. Levit. In rejecting the claim, the Court held:

> Contrary to appellant's assertion, Dr. Levit's testimony does not satisfy the evidentiary requirements needed to establish a diminished capacity defense. *At no point in his testimony did Dr. Levit state that appellant was unable to formulate the specific intent to kill.* As such, the testimony could not have been admitted at trial even had counsel attempted to present a diminished capacity defense.

*Id.* at 1010 (emphasis supplied). Moreover, the *McCullum* Court distinguished *Legg* by noting that in that case Dr. Levit had testified that the appellant "lacked the *ability* to rationally formulate the intent to kill." *Id.* (emphasis supplied). In the case *sub judice*, like *McCullum* and unlike *Legg*, the evidence produced upon collateral attack, even if deemed credible, did not demonstrate that appellant *lacked the capacity* to formulate a specific intent to kill.

Finally, the lead opinion's analysis of trial counsel ineffectiveness is legally erroneous because it faults counsel for failing to *anticipate* the decision in *Legg*. As Mr. Justice Saylor notes in his Concurring Opinion in this case: "Although the *Legg* majority did not acknowledge that its decision represented a marked expansion of the diminished capacity defense, I remain unable to read it otherwise." Concurring op. at 1220. I agree. The objective reasonableness of trial counsel's alleged failure here, of course, is determined by the legal landscape in existence at the time counsel was acting, for it is well-settled that counsel cannot be found ineffective for failing to anticipate changes in the law. *See Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 451 (1999) ("[W]e will not deem counsel ineffective for failing to anticipate a change in the law."); *Commonwealth v. Porter,* 556 Pa. 301, 728 A.2d 890, 901 (1999) (same); *Commonwealth v. Todaro,* 549 Pa. 545, 701 A.2d 1343, 1347–48 (1997) (same). As Mr. Justice Saylor notes, *Legg* represented just such a change. I cannot agree with the lead opinion's assumption that the Sixth Amendment requires trial counsel to be clairvoyant.

In any event, even if I agreed that the underlying claim respecting trial counsel was meritorious, I could not agree with the lead opinion's summary conclusion that direct appeal

counsel and PCRA counsel were *per se* ineffective for failing to pursue it. The lead opinion appears to believe that there are two different Sixth Amendment tests for counsel ineffectiveness: one, the *Strickland* test, governs claims of trial counsel ineffectiveness; while a second standard governs "layered" claims sounding in subsequent counsel ineffectiveness. The lead opinion thus appears to believe that, if a claim of trial counsel ineffectiveness is developed and found to have merit, then all subsequent counsel are automatically ineffective for failing to pursue the claim. This is so much so that the lead opinion does not even inquire into the actual performance of those attorneys.

The lead opinion's *per se* test is, in my view, erroneous under both federal and Pennsylvania law. Claims of appellate counsel ineffectiveness are distinct constitutional claims which are governed by the Sixth Amendment test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285–89, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (petitioner "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel"); *see also Commonwealth v. (Michael) Pierce*, 567 Pa.186, 786 A.2d 203, 221–22 (2001); *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 525 (2001); *id.* at 535–36 (Castille, J., concurring); *Commonwealth v. Balodis*, 560 Pa. 567, 747 A.2d 341, 343 (2000) (plurality opinion by Cappy, J.) ("Application of the 'reasonable basis' test pertains to appellate advocacy as well as trial strategy."). Obviously, a claim involving PCRA counsel is no less analytically distinct; otherwise, the lead opinion would not even reach the claim here. I have addressed at length the Sixth Amendment standards that govern claims of appellate counsel ineffectiveness, as well as the considerations concerning review of PCRA counsel's performance, and I need not repeat those settled standards here. *See, e.g., Commonwealth v. Lambert*, 797 A.2d 232 (Pa.2001) (plurality opinion by Castille, J.). For present purposes, it is enough to note Mr. Justice Cappy's recent observation:

[I]t is essential to consider the independent actions of all prior counsel at each stage of the proceeding, as they relate to the current claim of error in the collateral proceeding. It is not enough for a petitioner to argue the merits of the underlying claim and the prejudice suffered. At the PCRA stage, a petitioner must go the next step and elucidate how the underlying claim of error was handled by, or overlooked by, each intervening attorney in order to present a cognizable claim for collateral relief.

*Id.* at 249 n. 1 (Cappy, J., concurring). Furthermore, the PCRA itself specifically requires the petitioner to actually plead and prove his claims of counsel ineffectiveness. *See* 42 Pa.C.S. § 9543(a)(4) (petitioner must plead and prove, *inter alia,* "[t]hat the failure to litigate the issue prior to or during trial ... or *on direct appeal* could not have been the result of any rational, strategic or tactical decision by counsel") (emphasis supplied). Notably, in articulating its two-tiered approach to claims of counsel ineffectiveness, the lead opinion accounts for neither the governing legislation nor the governing U.S. Supreme Court authority.

In this case, appellant's ineffectiveness claims respecting appellate and PCRA counsel are boilerplate. Appellant simply asserts that, because the PCRA court found trial counsel ineffective—a dubious conclusion, as I have explained above— "it stands to reason that both PCRA counsel and appellate counsel gave ineffective assistance for failing to raise the claim that prior counsel gave ineffective assistance." Brief of Appellant at 26–27. The lead opinion apparently agrees with this *ipso jure* reasoning. But, as Mr. Justice Nigro has noted in two recent opinions, "[s]uch an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief." *Commonwealth v. Abdul–Salaam,* 2001 WL 1663976, at *1 n. 3 (Pa. Dec.31, 2001); *Commonwealth v. Bracey,* 795 A.2d 935, 950 (Pa.2001); *see also Lambert,* 797 A.2d at 242–43. The appellants in *Abdul–Salaam* and *Bracey* may fairly ask,

why were their Sixth Amendment claims summarily dismissed but this one accepted and they most likely will.

The lead opinion attempts to distinguish this case from *Bracey* and *Abdul–Salaam* on the ground that appellant is entitled to review of his claim because it is "properly-layered." *See* op. at 1218 n. 4. Mere "layering," however, does not account for the substantive constitutional (appellate counsel) or PCRA (PCRA counsel) standard. "Counsel must undertake to develop, to the extent possible, the nature of the claims asserted with respect to each individual facet of a layered ineffectiveness claim, including that which relates to appellate counsel." *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 525 (2001). In this case, as in *Bracey* and *Abdul–Salaam,* appellant's argument respecting appeal and PCRA counsel consists of a tacked-on boilerplate assertion that "it stands to reason" that subsequent counsel were ineffective, if trial counsel was. This bald and non-self-proving statement does not even begin to demonstrate that appellate and PCRA counsel were ineffective. *See Commonwealth v. Marrero,* 561 Pa. 100, 748 A.2d 202, 205 (2000) (Nigro, J., concurring) ("Appellant presents absolutely no argument in support of his catchall claim of ineffective assistance of prior appellate counsel.... Instead, [Appellant] simply argues the merits of ineffective assistance of trial counsel. In my opinion, and consistent with this Court's prior caselaw, Appellant has therefore also waived his catchall claim of ineffective assistance of prior appellate counsel.").

By failing to actually analyze appellate and PCRA counsel's performance and by finding merit in a totally boilerplate argument, the Court today not only renders a decision squarely in conflict with governing precedent, but it also suggests that lawyers in this Commonwealth will be deemed *per se* incompetent anytime they fail to anticipate a claim which a majority of an appellate court, in hindsight, believes to have merit. But that is not, and cannot become, the test for counsel ineffectiveness. It is not the test under the Sixth Amendment, nor is it the test required by the PCRA.

Finally, the lead opinion's adoption of a *per se* Sixth Amendment test governing appellate counsel is particularly inappropriate in a case, such as this, where the claim was not raised below and there is no factual record upon which to evaluate it. The PCRA court held a hearing on the claim concerning the foregone defense of diminished capacity. But appellant produced only his trial counsel, and not appellate counsel, at that proceeding. There is no record evidence, nor has appellant even made a proffer in connection with his new claim, as to what direct appeal counsel, much less PCRA counsel, might say in response to the late-found accusation that they too were incompetent. Thus, this Court has no idea, for example, what kind of investigation appellate counsel undertook, whether he talked to his client, what his client and his family told him, what research he may have done, etc. Perhaps appellate counsel's communications and interactions with appellant gave counsel no reason to pursue an ineffectiveness claim premised on diminished capacity. For all this Court knows, direct appeal counsel in fact consulted with a psychiatrist who interviewed appellant and told counsel that there was no basis for a diminished capacity defense. Or, even assuming that there was a psychologist available to appellate counsel who would have offered in 1990 the "imperfect diminished capacity" opinion Dr. Levit testified to in 1998, direct appeal counsel may have reasonably determined, especially given the legal landscape before *Commonwealth v. Legg* was decided, that that sort of irrelevant testimony did not support a diminished capacity defense. Or counsel may have perceived the claim but determined, in his professional judgment, that the claims he actually pursued on appeal—which neither the lead opinion nor the concurrences ever discuss—offered a greater prospect for relief under the law in existence at that time.

The point is that the Court deems the actual investigation and reasoning of appellate and PCRA counsel to be irrelevant—notwithstanding the Sixth Amendment and notwithstanding that the PCRA requires the petitioner to affirmatively demonstrate that appellate counsel's failure to litigate an issue "could not have been the result of any rational, strategic

or tactical decision by counsel." The Court makes no actual evaluation of counsel's performance. Instead, it casually and summarily holds, based upon a case decided years later, that three members of the bar of this Court were constitutionally incompetent as a matter of law for failing to pursue this claim. I cannot accept this approach.

For the foregoing reasons, while I agree with the resolution of the first issue presented, I respectfully dissent from both the decision to review the second claim and from the grant of a new trial.

Justice NEWMAN and Justice EAKIN join this concurring and dissenting opinion.

Justice NEWMAN concurring and dissenting.

I join the Concurring and Dissenting Opinion of Mr. Justice Castille. I write separately to emphasize my disagreement with the assertion by the Opinion Announcing the Judgment of the Court, in footnote 3, that *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293 (1999), requires this Court to treat Appellant's claim of ineffective assistance of post conviction counsel as ripe for review, even though presented for the first time in a petition for allowance of appeal. *Pursell* was an appeal from the dismissal of a timely post conviction petition in a capital case. Although we examined Pursell's claims of ineffective assistance of PCRA counsel, that review occurred in the context of our mandatory appellate jurisdiction in PCRA capital cases. Mandatory capital PCRA appellate review implicates considerations that simply are not present in a petition for allowance of appeal, in a non-capital PCRA case, where it is within our discretion to accept or decline review. Consequently, I do not believe that our capital PCRA jurisprudence serves as a useful paradigm for resolving this problem within our system of discretionary review.

I agree with Mr. Justice Castille's position that the allocatur process is not designed for review of claims of ineffective assistance of PCRA counsel raised in a petition for allowance of appeal. This Court does a disservice to the allocatur

542

process—the vehicle by which we set policy for the Commonwealth on "special and important" matters—when we entertain claims for which there has been no prior appellate review.